## JOHN ROSSMAN v. CHARLES BOCK.

*Pleading—Bill of particulars—Action for goods sold—Statute of frauds—Evidence.*

1. Where itemized statements of goods sold, showing the balances claimed to be due, are presented monthly, and allowed to pass unquestioned, satisfaction with the same, and acquiescence in the claimed balances, will be implied.

2. It is competent for a plaintiff to show his inability to furnish a bill of the items of his demand, and, having done so, it would be a reproach upon the law to deny him relief upon the technical ground that the bill furnished is not specific.

3. Where, on the trial of an appeal case, objection is made to the plaintiff's bill of particulars filed in the circuit court as not sufficiently specific as to items, it is competent, for the plaintiff to show that he filed an itemized bill in justice's court, which is not returned by the justice, nor shown by the return to have been demanded.

4. It is competent for the plaintiff, in a suit brought to recover for goods which he claims to have furnished a third party upon the agreement of the defendant to pay for the same, to testify that he never presented a bill to the third party for the goods, or made any claim against him, and that he did not look to him, or hold him responsible in any way, for the goods, as tending to exclude any claim that might be made by the defendant under the statute of frauds.

5. Testimony that the defendant gave the third party a pass-book in which to have the purchases from the plaintiff entered, which book bore defendant's name, is admissible as tending to corroborate plaintiff in the statement that the credit was to be given to the defendant.

Error to Gogebic. (Haire, J.) Submitted on briefs October 12, 1893. Decided November 10, 1893.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Button & Norris,* for appellant, contended:

1. The testimony was not sufficient to establish an account stated, even if it had been competent to prove such an account in this case; there was no assenting to the bill, but a denial of all indebtedness; citing *Stevens v. Tuller,* 4 Mich. 387; *White v. Campbell,* 25 Id. 463; *Payne v. Walker,* 26 Id. 60; *Raymond v. Leavitt,* 46 Id. 447.

2. That the promise was within the statute of frauds, see *Studley v. Barth,* 54 Mich. 6; *Hake v. Solomon,* 62 Id. 377.

*Frank F. Kutts,* for plaintiff, contended:

1. The only purpose of a bill of particulars is to apprise the opposite party fairly of the nature of the claim relied upon;

citing *Davis v. Freeman,* 10 Mich. 188; *Freehling v. Ketchum,* 39 Id. 300; *Wright v. Dickinson,* 67 Id. 583, 584.

HOOKER, C. J. In an action of *assumpsit* appealed by defendant from justice's court, the plaintiff filed a bill of particulars in the circuit court as follows, viz.:

"STATE OF MICHIGAN, }
      "The Circuit Court for Gogebic County. }
        *"John Rossman vs. Charles Bock.* }

"Plaintiff's Bill of Particulars.

"To balance due for meat, vegetables, eggs, butter, and apples furnished at his request, delivered to M. A. Calkins, an itemized statement of which was presented to the defendant each month, from November, 1888, to April, 1889, a portion remaining unpaid each month, the balance remaining unpaid being $56.

"An itemized bill of particulars was furnished in the court below, and has been lost, and, plaintiff's books of account being lost or destroyed, a more particular statement of account is impossible.

                "JOHN ROSSMAN.
                "FRANK F. KUTTS."

Plaintiff based his claim to a judgment upon an agreement between himself and the defendant, whereby the latter, who was a creditor of one Calkins, a boarding-house keeper, directed the plaintiff to furnish Calkins with meat and other provisions upon defendant's account. On the other hand, the agreement was claimed by defendant to be that he, being a grocer, and plaintiff, a butcher, should furnish provisions to Calkins, and that the money which defendant should receive should be applied *pro rata,* if he did not receive enough to pay in full. The defendant seems to have been a creditor of Calkins, and was endeavoring to collect his debt by aiding Calkins to keep a boarding-house.

Defendant's first contention is that the bill of particulars was not sufficiently specific to permit the introduction of proof. A second is based upon the question, asked by plaintiff's counsel, to plaintiff:

"*Q.* State whether or not in justice's court you filed an itemized statement and bill of particulars of your demand. "*A.* I did."

Some further testimony tending to show plaintiff's inability to furnish a more specific bill of particulars was given.[1] He had already testified that the defendant came to his market, and said to him that Mr. and Mrs. Calkins were going to keep boarders, and that he was going to furnish them supplies, and that he had made an arrangement with the mining captain to draw all their board money, and also Mr. Calkins' wages as engineer at the mine, as security for supplying the boarding-house; and that he told the plaintiff to furnish them their stuff in his line, and he would see him paid, subject to any *pro rata* loss arising from a failure of the mine. He continued, as follows:

"*Q.* You say that Mr. Calkins came from time to time from the date of this agreement up to the April following, and ordered goods from your place of business? "*A.* Yes, sir.

"*Q.* What sort of supplies did you furnish? "*A.* I furnished her fresh meats, butter, eggs, and some vegetables and apples. In the fall and winter we had quite a few apples, and she took some of them, but mostly furnished meat and eggs and vegetables.

"*Q.* Did you at any time receive any payment for the supplies furnished? "*A.* I did.

"*Q.* How often? "*A.* About once a month.

"*Q.* From whom? "*A.* From Charles Bock."

And witness further testified:

"I rendered Mr. Bock, the first of each month, with an itemized statement of the goods that had been furnished

---

[1] This testimony tended to show the loss of plaintiff's books of account, and that it was impossible for him to make out an itemized bill from his recollection. The bill filed in justice's court seems to have been conceded to be lost.

to Calkins. He examined the account when presented, and never raised any objection to the amount or the items of it. I never had any trouble then in regard to the amount or anything about the price, or anything of the kind. I rendered him a statement the first of each month always. It was not paid in full. After the boarding-house had closed, the business had stopped, I asked Mr. Bock for payment of the sum remaining unpaid. When I made the demand on him ·for the amount due me he said: 'I don't propose to pay this. If you want this, you will. have to sue it.'

"Q. What amount did you demand from him at that time?

"A. $56. * * * He made no objection whatever to the amount.

"Q. State whether or not he assigned as a reason for not paying you that the amount was not due you.

"A. His claim was that we entered into this *pro rata* agreement on the start. That was the first time he claimed it,—when I presented the bill.

"Q. State whether or not Mr. Bock at any time made any question as to the correctness of the accounts rendered by you to him during the course of this business.

"A. No, sir; there never was any question whatever.

"Q. Now, state, if you please, the balance remaining unpaid, if any.

"A. $56."

Counsel contend that this proof is' not admissible, in that, like the bill of particulars, it does not show that any specific items of any specific value or agreed price were furnished, and that it cannot be claimed to be admissible in support of an account stated, as the bill of particulars makes no such claim. We think that from this testimony a jury would be warranted in finding (1) that provisions were furnished; (2) that they were worth the amount paid, and any balance that the defendant expressly or tacitly admitted; (3) that payment in part was made; (4) the aggregate of the monthly balances furnished defendant. The presentation of statements monthly of balances, if allowed to pass unquestioned, implies satisfac-

tion with the same, and acquiescence in the claim. Several cases are cited to the proposition that a statement of account, accepted and retained without objection, becomes an account stated. If so, as the greater includes the less, it would seem to be an admission that the goods were furnished as a basis of such balance, the items of which then become unimportant. As to the bill of particulars, the plaintiff owed it to the defendant if it could be furnished, and it was proper for him to show his inability. Having done so, it would be a reproach upon the law to deny him relief upon the technical ground that his bill was not specific, thereby punishing him for not performing an impossibility. The fact that he filed a bill in justice's court was admissible. The return does not show it, or that one was demanded, but the plaintiff might properly show that he had given defendant the information sought in this or any other manner. This disposes of the first six assignments of error.

The seventh and eighth assignments are based on the following questions asked plaintiff upon redirect examination, viz.: "Did you ever at any time present a bill to the Calkins for these goods, or make any claim against them?" "State whether or not you looked to them, or held them responsible in any way, for the goods." These questions and their answers (which were in the negative) tended to exclude any claim that might be made by defendant under the statute of frauds. Whether any claim of the kind was made we cannot tell, but on cross-examination an attempt was made to show that plaintiff was to be paid from moneys received from Calkins. The court properly admitted the testimony.

The ninth, tenth, eleventh, and twelfth assignments refer to testimony tending to show the arrangement that was made between defendant and Calkins. The objection to this is that it tends to show that the boarding-house busi-

ness was a venture of defendant, and that Calkins had no interest in it, and that, therefore, the goods were furnished to defendant irrespective of any agreement. The record shows that plaintiff's counsel avowed his intention to show that this was defendant's exclusive business. The testimony was admissible. It tended to corroborate plaintiff's testimony that defendant promised to pay for the supplies. There is nothing in plaintiff's testimony or in the opening by counsel inconsistent with such a state of facts, although it may be implied from the former that he did not understand from defendant that this was true. No error was committed in receiving this testimony.

The thirteenth, fourteenth, and fifteenth assignments are based on the following:

"*Q.* What did he say the arrangement was between himself and Mr. Calkins? (To which question the counsel for the said defendant did then and there object as immaterial, but the said circuit judge overruled the said objection, to which ruling of the said circuit judge the said counsel for the defendant did then and there except.)

"*A.* Well, I was to keep a boarding-house, and he was to draw all the board money and Mr. Calkins' wages; and I asked him what we would do for meat, and he said that Mr. Rossman was to furnish us the meats.

"*Q.* Did he say who was to pay for the meats?

"*A.* He was to pay for the meats."

The witness further testified:

"The money remaining, if any, over and above enough to pay for supplies, from the board bill and wages, was to be turned on the old account. I went there, and kept a boarding-house, under this arrangement, beginning in September or October, 1888, and kept boarders until April following.

"*Q.* How many boarders did you keep there? What was the largest number during any one month?

"*Mr. Button:* Objected to as immaterial and incompetent.

"*Mr. Kutts:* I will waive that question.

"*Q.* What constituted your family at that time? (And to the said question the counsel for the said defendant did

then and there object as being immaterial and incompetent, saying, 'My point is that the size of their family, or the amount of their board bill, or the amount of money actually received, is immaterial in this case.' But the said circuit judge overruled the said objection, to which ruling of the said circuit judge the counsel for the said defendant did then and there except.)

"*Mr. Kults:* We are going to show the profits of the boarding-house. (And to the remarks of said counsel wherein he says, 'We are going to show the profits of the boarding-house,' the counsel for the said defendant did then and there except.)

"*A.* There was myself and my husband, and a daughter and one baby, and a little boy, three years old, and one about six. My daughter was fourteen years old. She assisted me in the work there. I and my daughter did the work for the boarders. One month we had a hired girl. Mr. Bock furnished us housekeeping apparatus, beds, bedding, mattresses, etc. Yes, mattresses, I believe three or four springs, I cannot say which, seven or eight comfortables, and six or seven pillows, sheets and pillow-cases, and six or seven blankets."

Upon cross-examination the witness testified:

"These things were all charged to us by Mr. Bock. We didn't have much money at the time we started keeping boarding-house. It was necessary for us to get these things and some credit in order to start the boarding-house. I didn't hear the talk between Mr. Bock and Mr. Rossman. I went to Mr. Bock and says, 'I want to know about this,' and I says, 'I have got to have meat, and I have got to have a hired girl;' and he said he had made arrangements for the meat, and that he was to pay Mr. Rossman, and that he would draw the wages from the mine for the boarders and my husband's wages; and then I says, 'Well, I have got to have a hired girl.' 'Well,' he says, 'of course you will have to have some help, and I will pay the hired girl.' At that time we had no boarders engaged. Arrangement had been made with Captain Sampson that he was to send the men over. Mr. Bock was to draw all the money, both Mr. Calkins' wages and for the boarders; and out of that money he was to pay the girl. I don't know whether he was to pay Rossman out of that money or what money, but he was to pay the butcher; but it was not said what money he should pay it

out of, not to me.   He didn't explain that.   All I know
he was to pay for what stuff we got, and he was to draw
the wages.   Of course, we couldn't pay for it.   We didn't
have the money.   I don't know what the actual arrange-
ment between him and Mr. Rossman was, except what Mr.
Bock told me.   He did not tell me whether he was to
pay for the meats out of money received from the mine or
not.   He was to pay Rossman.   Mr. Bock gave me a pass-
book to have things charged as we got them from Mr.
Rossman's."

And upon redirect examination the witness testified as
follows:

"There was a name in the pass-book given us by Mr.
Bock.

"*Q.* Now, what name was in the book?   (And to the said
question the counsel for the said defendant did then and
there object as incompetent and immaterial.)

"*Q.* Have you looked for the pass-book, and tried to
find it?

"*A.* I have never been called upon.   I didn't.

"*Q.* Were you requested to search for all the books and
papers you had on the trial of this action?

"*A.* I found all I could of them.

"*Q.* Did you find this pass-book?

"*A.* No, sir.

"*Q.* Did you look for it?

"*A.* Yes, sir; for all the books I had.

"*Q.* This particular pass-book?

"*A.* Yes, sir.

"*Q.* You were unable to find it?

"*A.* Yes, sir. (But the said circuit judge overruled the said
objection, and to said ruling of the said court the counsel
for the said defendant did then and there except.)

"*Q.* (Repeated.)   What name was in that book?

"*A.* Charles Bock."

Much of the foregoing testimony was admissible under
the rule above stated, though the size of the Calkins
family was immaterial.   We think, however, that the cause
should not be reversed for this reason, as we cannot see that
the defendant was injured by this testimony.

The questions in relation to the pass-book were properly

admitted. If Bock gave Mrs. Calkins a pass-book in which to have purchases from plaintiff entered, which book bore his name, it tended to corroborate plaintiff in the statement that the credit was to be given to the defendant.

The assignments relating to the requests to charge are without merit, the first and second being covered by the charge given. The others should not have been given. The charge was fair, and conformed to the law of the case.

The judgment will be affirmed.

The other Justices concurred.