HAYNES *v.* MAYBURY.

1. LANDLORD AND TENANT—NEGLIGENCE—LEASE—REPAIRS.

The rule that a landlord, in the absence of an agreement to repair leased premises, is not liable for damages to the tenant's property caused by defective plumbing, although he subsequently, without consideration, promises to make repairs, is not applicable to a case where the lease contained a covenant of the lessor to repair.

2. SAME—TRIAL—DIRECTING VERDICT—OPENING STATEMENT.

After having decided to direct a verdict on the opening state-
ment of plaintiff's attorney, and having reconsidered the rul-
ing at the suggestion of defendant's counsel that it would be
well to take plaintiff's testimony, the court should not direct
the verdict for defendant at the close of the cross-examina-
tion of plaintiff.

3. SAME.

Before directing a verdict on plaintiff's opening, the court
should inform his counsel wherein he has failed to state a
case.

4. SAME.

And although plaintiff's statement and testimony failed to
show that he was free from contributory negligence, he was
entitled to be advised of that claim if the verdict was directed
for such reason.

Error to Wayne; Donovan, J. Submitted April 12,
1911. (Docket No. 104.) Decided July 5, 1911.

Case in justice's court by John F. Haynes against
William H. Maybury for damages to personal property
and for personal injuries. Defendant appealed to the
circuit court from a judgment for plaintiff. A judgment
for defendant on a verdict directed by the court is review-
ed by plaintiff on writ of error. Reversed.

*Philip A. McHugh* and *William Henry Gallagher*,
for appellant.

*George F. & Peter J. Monaghan*, for appellee.

BLAIR, J. This suit was commenced in justice's court.
The declaration was on the case to recover damages
against plaintiff's landlord, who had agreed to make nec-
essary repairs, setting up, among other things, that, after
occupying the premises several months, plaintiff discov-
ered that the plumbing in the cellar was out of repair, of
which fact he gave notice to defendant.

"Plaintiff further avers that the cellar in said dwelling
house became more unsanitary hour by hour after the giv-

ing of said notice to said defendant, his agents, and servants. Stagnant water did gradually then and there accumulate on the floor of said cellar until a depth of about 10 inches was attained, then and there causing many and divers noisome, noxious, poisonous, malarial, offensive, and unwholesome smells, vapors, diseases, and stenches to permeate the entire cellar and other parts and portions of said dwelling house, causing plaintiff's aforesaid vegetables to become utterly ruined and destroyed.

"Plaintiff further avers that said defendant, his agents and servants, well knowing the premises as aforesaid, did wickedly, wantonly, wrongfully, and cruelly neglect and refuse to remedy the defective and unsanitary condition of said cellar, although often requested by plaintiff and the members of plaintiff's family and certain other occupants of plaintiff's household so to do."

In the opening statement to the jury counsel stated the case in substance as follows: After stating the terms of the lease, including an agreement on the part of the lessor to keep the place in reasonable repair during the term, the occupancy thereof by plaintiff from August 1, 1909, until the middle of November following and the discovery on November 10th that water was backing up into the cellar—

"The evidence will show that he then went next door, where Mr. Maybury lived, and attempted to convey this fact to a Mrs. Burkery, a sister of the defendant and his agent in charge of the premises. She was not at home, but the facts were given to her daughter to tell to her. Later on in the afternoon Mrs. Haynes called her by phone, and again told her of the fact. Nothing had been done the next morning and Mrs. Haynes again called up, and called up several times during the day. That was on Thursday, November 11th. On the same day Mr. Haynes chanced to meet Mr. Maybury, and he told him of the condition of the cellar, and Mr. Maybury said that he would see that it was fixed.

"Once the water started backing into the cellar, it continued to do so until there were some 12, 16, or 18 inches of it there. Mr. and Mrs. Haynes telephoned to Mr. Maybury and his agent, Mrs. Burkery, every day, and several times each day on Wednesday, Thursday, and Friday. Still nothing was done to remedy the conditions

existing there. On Friday Mr. Haynes complained to the health board, and they sent an inspector there, who said it would have to be fixed at once. Nothing was done until the following Monday, and at that time one man came to do the work, and he worked there on Tuesday, Wednesday, and Thursday, or a portion of those days, and eventually succeeded in getting the water out of the cellar. After the water was removed, it left a dirty scum around the cellar walls and on the cellar floor, and on everything in the cellar. And as a result of the water being there and running away the vegetables stored there began to rot. Mr. Haynes had a large quantity of vegetables there which he had bought for winter use, about $50 worth in all, all of which was submerged in and was floating around in the water, and began to decay afterwards. The water to which I have referred was sewer water, dirty and foul, and gave off a dirty, sickening, and disgusting odor. This odor remained in the house until the plaintiff moved. Not only the cellar, but the whole house, was filled with the odor that arose from that scum on the walls.

"The evidence will show that there was no one in the house that escaped without some sickness. One was affected in one way and one in another. People that were rooming in the house left, and the Hayneses were notified by the board of health that they ought to move, as the place was not fit to live in. And they did move on the second Saturday following the day on which they were notified they ought to move. After being notified of the condition of the premises, the defendant and his agent made no protest that they were not liable for the remedying of those conditions, but gave promise after promise that they would see that they were remedied. And they did send a man there on Friday. He came and looked at the place, and let it go at that, and on Monday some one came and commenced to do some digging with a view to remedying the conditions existing there. The evidence will indicate that as a result of this condition plaintiff was obliged to move and did move before the term for which he had paid had expired. He had paid for the month of November, and moved out on the 22d of that month. He lost several days of work while moving. He was obliged to and did pay out money for physician's services for himself and his wife. And, when we have proven all of these facts, we will ask at your hands a ver-

dict for the plaintiff for such an amount as will properly compensate him for the damages he has sustained."

Immediately upon the conclusion of the statement, the court announced that in his opinion the case was governed by *Rhoades* v. *Seidel*, 139 Mich. 608 (102 N. W. 1025), and the following occurred:

"*The Court:* The clerk will take a verdict of no cause of action.

"*Mr. Monaghan:* In order to save any question, so that, if Mr. Gallagher desires to appeal upon the proposition, I would suggest that the plaintiff be allowed to introduce the testimony of the plaintiff, upon the proposition, and let it go at that.

"*Mr. Gallagher:* I am satisfied, if the court is satisfied, to have a verdict directed upon my opening statement, but I do not want to be considered as acquiescing in it.

"*The Court:* I did not hear all of the opening statement and I would rather you would put on your plaintiff if you desire."

At the close of plaintiff's cross-examination the following occurred:

"*Mr. Monaghan:* That is all, I just wanted to get that matter into the record.

"*The Court:* I have not changed my mind one particle about this case."

And thereupon, on motion of defendant's counsel, the court directed a verdict for defendant.

It is plain that the case of *Rhoades* v. *Seidel*, where there was no original agreement to repair and the subsequent agreement was not supported by any consideration, does not rule this case. It is equally plain that after defendant's counsel had induced the court to take the plaintiff's testimony, and had drawn out such testimony on cross-examination as he thought would strengthen his case, a verdict was directed without affording plaintiff, who had not rested his case, an opportunity to call other witnesses to sustain his case.

After reconsidering his order to the clerk to take the verdict upon the opening statement and entering upon the

trial, the plaintiff should have been permitted to call witnesses, if he chose, to cover phases of his case not covered by his own testimony.

Furthermore, we are of the opinion that, before directing a verdict upon an opening statement, the counsel should be informed as to the points in which he has failed to state a case. He was informed in this case substantially that he had no case because the defendant was not liable for a negligent failure to repair upon the authority of *Rhoades* v. *Seidel.*

There was nothing to indicate to plaintiff's counsel, except as indicated by the cross-examination and the motion of defendant's counsel after the case had been taken out of his hands, that there was any other basis for the direction of the verdict than that originally announced by the court, and, so far as the record discloses, that was the ground of the court's final action. *Prima facie,* the statement made out a case of negligence against defendant which entitled the plaintiff to put in his proofs, and doubtless, if his attention had been called to the fact that he had failed to state that he expected to prove that plaintiff was free from contributory negligence, he would have covered that subject in his statement. We do not think that the plaintiff had a fair trial, and, although it would appear from this record that the result was not far out of the way, plaintiff should have an opportunity to present his case as a whole. We think he has been erroneously deprived of this opportunity. The judgment is reversed, and a new trial ordered.

OSTRANDER, C. J., and BIRD, HOOKER, and STONE, JJ., concurred.