MINKSTIMAS *v.* PANTLIND.

TRIAL—DIRECTING VERDICT—STATEMENT OF COUNSEL—MISTRIAL.
    A mistrial of a personal injury case occurred where the court
    directed a verdict for defendant on the opening statement
    and the testimony of one witness, the plaintiff, who claimed
    that she was injured while cleaning a dishwashing machine
    into which plaintiff's superior servant, the steward, who hired
    her and had charge of the machine, turned hot water, scald-
    ing plaintiff; the issue as to the steward being a vice princi-
    pal or a subordinate was a question for the jury which plain-
    tiff was entitled to develop.

Error to Kent;· McDonald, J. Submitted April 5,
1912. (Docket No. 45.) Decided May 31, 1912.

Case by Sielma Minkstimas against J. Boyd Pantlind
for personal injuries. A judgment for defendant on a
verdict directed by the court is reviewed by plaintiff on
writ of error. Reversed.

*Martin L. Fetta* and *Geo. E. & M. A. Nichols,* for
appellant.

*Fred L. Vandeveer* and *Henry T. Heald,* for ap-
pellee.

STONE, J. The plaintiff in this case, a young woman
of foreign birth, 22 years of age, who had been in this
country less than a year and a half, and who spoke but
little English and testified at the trial through an inter-
preter, was severely scalded on April 24, 1911, while in
the employ of defendant at the Hotel Pantlind in the city
of Grand Rapids, under the circumstances hereinafter
disclosed.

Owing to the course which the trial took, the opening
statement of plaintiff's counsel becomes material. We
quote the following:

" We will show you, gentlemen, that the plaintiff was in the employ of J. Boyd Pantlind in his hotel kitchen on or about the 24th day of April of this year; we will show you that the plaintiff was hired, and was given her job, by one James Smith, and that James Smith was the steward in the kitchen of the Hotel Pantlind. We will show you further that the plaintiff, being thus in the employ of the defendant, was given some duties to perform in and about the kitchen of the hotel, and that among her duties it was her duty to perform the washing and the cleaning of the dishes in the kitchen. * * * And also to clean and wash and scrub up a certain dishwashing machine in the kitchen; but, gentlemen, mind that it was not her duty to run the machinery of the dishwashing machine in question, or turn on the water, or to do anything that had to do with the operation of the machinery of the dishwashing machine in question. We will show you that the defendant did not warn or instruct the plaintiff in the use of this dishwashing machine, and in the operation of the machinery of the machine. We will show you that her foreman or steward, James Smith, did not instruct her how to operate this machinery of the dishwashing machine. We will show you that James Smith did not warn her of any danger connected with the operation of this machine; we will show you that James Smith did not warn her of any defect in this machinery, in this dishwashing machine."

Counsel further stated in substance that plaintiff would show that nobody connected with the hotel instructed the plaintiff in the use or operation of the machinery of the dishwashing machine, nor of any danger connected with the running of the machine, nor was she warned of any defects in the machinery; that, being thus in the employ of the defendant and under charge of James Smith, the foreman or steward, the plaintiff was directed by him to go and scrub the dishwashing machine and clean out the kettles of the machine. That plaintiff would show that there were three circular kettles or tanks made of galvanized iron connected together in a row horizontally, each about two feet in diameter, two washing tanks for washing dishes, and one rinsing tank; that the two washing tanks were a little over three feet deep, and the rinsing

tank a little over two feet deep.   These three tanks were connected together; that there was a number of pipes running along on the side of the machine, steam and water pipes.   In each tank or kettle there were holes in the bottom to admit the steam and hot water through these pipes down and up through the bottom; that plaintiff would show by expert testimony just how this machine was constructed; that at each end of these tanks there were two valves—that is, a knob to turn on the water and the hot steam—and that there was a separate hole in the bottom of the tank for the hot water to come up through; that there was a separate hole for the hot steam to come up through; that these two holes in the bottom of each of these tanks were circular, and almost an inch in width or diameter; that there was no cap over these holes to prevent the water from coming straight up, or to prevent the steam flying straight up; that these were defects; that with reasonable care the defendant should have known this; that if he had made reasonable investigation he would have found that these holes were unguarded in the bottom; that the plaintiff would show by expert testimony, if there had been a cap over each one of the holes, or if there had been a small pipe coming up through the hole, and a covering on top of the pipe and a perforation or holes at the side of the pipe, then the hot water would shoot to the sides of the kettles or tanks, and also the hot steam, and the tanks or kettles would fill up gradually, without any danger to anybody; that James Smith was the operator of this machine, or machinery, and that he was the foreman and the vice principal; that when the plaintiff was directed to go and clean these tanks or kettles she obeyed his order; that he was the boss, and she had a right to rely on his care.   She commenced on the end washing tank, then she cleaned the middle washing tank, and started to scrub the rinsing tank, and while she was so doing, and while bending over the rinsing tub, said James Smith came rapidly there, and without any warning to the plaintiff, and without telling her to get out of the way or anything, turned

on this machinery—he turned on the hot water and steam —and scalded the plaintiff in the face, eyes, neck, and other parts of her body.

The only witness sworn in the case was the plaintiff. She testified in substance that she was working in the kitchen; that James Smith, the steward, gave her the job; that he was the boss; that he was her foreman; that he gave her the orders to scrub the kettles; that it was not her duty to run the machinery of the dishwashing machine; that defendant gave her no instructions how to run the machine.

"*Q.* State whether or not James Smith, the foreman, ever gave you any?

"*Mr. Vandeveer:* There is not any testimony here about any foreman; the testimony is that he was a steward, and I don't want that injected into the case."

The question was then changed, substituting the word "steward" for "foreman," and she answered, "No." She was then asked whether the defendant or Smith ever warned her of any danger which might happen to her from the dishwashing machinery or machine. This was objected to as too broad a question, and the objection was sustained. She was finally permitted to testify that neither the defendant nor Smith ever told her of any defects in the dishwashing machine, and that she did not talk with the defendant about the machinery. She further testified that she had to do what James Smith, the steward, asked her to do around the kitchen; that he told her to clean the kettles on the day of her injury; that she went ahead and obeyed his orders; that while she was cleaning the third kettle Smith stood right there and turned on the steam and hot water, and that she was burned. She then testified fully as to the extent of her injury, the amount of her wages, and the amount of the expenses of medicine and medical attendance. She further testified that she never had turned on the machinery of the dishwashing machine; that she did not know that the machine was dangerous; that James Smith did not tell her he was going to turn on

the machinery; and that she didn't know anything of it.

At this point plaintiff's counsel indicated that he was through with the witness. Whereupon the court excused the jury, and the following occurred:

"*The Court:* Since there is going to be a motion to direct a verdict in this case, I don't know whether it cannot be made at this time as well as later, because the plaintiff's theory has been stated by the plaintiff in his opening statement, and this witness has testified to an undisputed fact. As to how the accident occurred will be undisputed.

"*Mr. Vandeveer:* If I may make this statement as to what occurred, the statement that has been made by plaintiff's counsel is practically true, although in one or two details there may be a variation. In the employ of the defendant there were two Smiths; that is, pronounced Schmidt; one is Mr. William Schmidt, and the other was Mr. James Smith. Mr. Schmidt was the steward, and Mr. James Smith was an employé of his, the same as this lady was, an assistant; he had charge of certain work there, Mr. James Smith did, and this lady had charge of certain work, and I think the testimony on behalf of the defendant would disclose without doubt, and that during the cross-examination of the plaintiff she would admit it. I don't know as to whether or not that is material in the case, but, in order to clear the record up, I would like to state that fact. Outside of that, I cannot at this time think of any material changes in the testimony so far as the conflict would be, and if this is a case that may ultimately go to the Supreme Court, and if the plaintiff has a desire to take it to the Supreme Court, I don't know of any other record that can, because all the other testimony is accumulative. There has been no dispute on the facts. We admit the facts practically as stated by plaintiff's counsel, and it is simply a question of the application of the law on those facts, and it would be cheaper for them, if they want to go to the Supreme Court, to go on this record than to accumulate a large record.

"*The Court:* I do not want to take the time to put in a lot of testimony if eventually I should direct a verdict. Of course the testimony that you would offer when you come to your defense is that Mr. James Smith, who started the dishwashing machine in operation, was not the foreman or superintendent, and did not have charge of

the defendant's business—that would be an important matter.

"*Mr. Vandeveer:* Let me ask the witness this question in order to clear the record up to this extent, so that the court can go on and make a ruling. (Mr. James Smith here stood up in the courtroom at the request of Mr. Vandeveer.)"

Cross-examination of plaintiff by Mr. Vandeveer:

"*Q.* Is this the same James Smith that turned the water and steam on?

"*A.* Yes, sir.

(At the request of Mr. Vandeveer, Mr. William Schmidt stood up.)

"*Q.* Mr. William Schmidt here is the one that hired you?

"*A.* No; it was this fellow.

"*Q.* Did Mr. James Smith hire you?

"*A.* Yes, sir.

"*Q.* What did Mr. James Smith do; was he the steward?

"*A.* Yes.

"*Q.* Was Mr. William Schmidt the steward?

"*A.* No.

"*Q.* What was he?

"*A.* Chef.

"*Q.* He was the chef?

"*A.* Yes, sir.

"*Mr. Vandeveer:* We cannot clear it up with her. If the court wants any testimony, we will have to show that William Schmidt was in charge of the kitchen and he hired James Smith, and that both of them were his subordinates.

"*Mr. Vandeveer:* Now the question is before the court, what are you going to do?

"*The Court:* Mr. Fetta, do you expect to show that Mr. James Smith was in entire charge of the defendant's business there?

"*Mr. Fetta:* If your honor please, we expect to show by our witnesses that James Smith was vice principal; that he was in charge of overseeing the help and directing their affairs in their work.

"*The Court:* What will your testimony show in regard to the other man; what position did he hold?

"*Mr. Fetta:* We did not have anything to do with the

other man because he is not involved in this transaction, and the burden would be on the defendant to bring out that matter, we believe. We contend that there is a distinction between the chef's position and the steward's position. The steward, in my opinion, does all the buying of the food products, and directs the general work about the kitchen, whereas the chef has charge mainly of the cooking; he is the head cook, and we believe there is no argument or controversy but that the chef is the head cook.

"*Mr. Vandeveer:* I may say this, if that question gets into the case, I think we will be able to bring some 25 or 30 employés from the kitchen down here to show that Mr. William Schmidt does all the hiring and is the one who is in charge of the kitchen, and has absolute control of it, so that that statement will not stand.

"*The Court:* So far as that is concerned, that would raise a question for the jury.

"*Mr. Vandeveer:* That is merely as to the weight of it on a motion for a new trial."

After a lengthy argument of counsel on both sides, the court said:

"Well, the reason why I halted the proceedings where I did was because it was my judgment, from the appearance of your case, that there was no liability on the part of the defendant. Of course it is the duty to provide safe machinery, and a safe place in which to work, and if James Smith started that machine in operation to see if it was safe for employés to work upon, that would be an act of the master for which the master would be liable. But the turning of it on at that time was peculiarly, in my judgment, a negligent act of a servant, of the steward, for which he alone was liable. I cannot see where you have any case to go to the jury because of the fellow-servant proposition."

After further discussion and colloquy, the court directed a verdict for the defendant, and a judgment for defendant was entered.

The plaintiff has brought the case here by writ of error, and among the assignments of error are the following:

(1) The court erred in directing a verdict and rendering judgment for the defendant.

(9) The court erred in refusing to permit the plaintiff to make her case in said cause, and in directing a verdict before said plaintiff had an opportunity to offer all of her proof.

We have read this record carefully, and have quoted sufficiently from it to show that upon a number of propositions asserted by plaintiff's counsel in his opening statement, and bearing upon which he was proceeding to offer evidence, there was not an agreement between opposing counsel, or between plaintiff's counsel and the court, when the trial was interrupted. As an illustration: We are unable to tell from the state of this record what relation James Smith bore to either the plaintiff or defendant. Plaintiff's counsel in his opening had said that he would show that Smith was the foreman of the kitchen, and in fact the vice principal. While calling him by that title would not be evidence of the fact, yet it would seem to give the right to show the facts. At the time the trial was interrupted, counsel for defendant was not satisfied with the state of the record upon that point, but attempted to show by the cross-examination of the plaintiff that William Schmidt and not James Smith was the person who hired plaintiff and who had charge of the kitchen. This he was unable to do, and said, "We cannot clear it up with her. If the court wants any testimony, we will have to show that William Schmidt was in charge of the kitchen, and he hired James Smith, and that both of them [meaning, we suppose, James Smith and plaintiff] were his subordinates," and later counsel asserted that he would be able to bring 25 or 30 employés to prove that fact. Notwithstanding the statement of plaintiff's counsel, again repeated, that he expected to show that James Smith was vice principal and was in charge of the kitchen, which, in view of the assertion of defendant's counsel, the court said would raise a question for the jury, yet the court proceeded to direct a verdict and judgment for the defendant. We are not able to say, from an inspection of this record, whether or not the plaintiff has a cause of

action against the defendant. What we do say is that in our opinion, the plaintiff had the right to put in her, evidence and develop her case, and that she was deprived of that right.

What occurred was not a trial, but a mistrial, and, for the reasons stated, the judgment of the circuit court is reversed and a new trial granted.

Moore, C. J., and Steere, McAlvay, Brooke, Blair, and Ostrander, JJ., concurred. Bird, J., did not sit.