MUTUAL ELECTRIC & MACHINE CO. *v.* TURNER
ENGINEERING CO.

1. SALES—ACCEPTANCE BY BUYER DOES NOT PRECLUDE CLAIM FOR
   DAMAGES FOR BREACH OF CONTRACT—WAIVER.

   Where, in an action for the balance due on the sale of a
   switchboard, the testimony was in controversy as to
   whether defects therein were of such nature that they
   were not discoverable until after the board was put in
   operation, and there was testimony that the buyer gave
   notice of said defects to the seller, who made unsuccess-
   ful efforts to remedy same, as soon as they developed,
   it cannot be said, as a matter of law, that the buyer waived
   its right to recoup its damages for breach of the contract
   (3 Comp. Laws 1915, § 11880).[1]

2. ACCOUNT STATED—PAYMENTS ON MONTHLY STATEMENTS DOES
   NOT SHOW ACCOUNT STATED WHERE SELLER HAD NOTICE OF
   DEFECTS.

   Where the efforts to remedy the defects in a switchboard
   were continued over a period of several months, during
   which time considerable correspondence passed between
   the buyer and the seller, the latter at first attempting
   to remedy the defects, the fact that in the meantime
   monthly statements were rendered to the buyer who made
   payments thereon, did not show an account stated, pre-
   cluding the buyer from presenting its counterclaim for
   damages, in an action by the seller for the balance due.[2]

Error to Wayne; Richter (Theodore J.), J.    Sub-
mitted October 10, 1924.    (Docket No. 76.)    De-
cided April 3, 1925.

Assumpsit by the Mutual Electric & Machine Com-
pany against the Turner Engineering Company for
goods sold and delivered.    Judgment for plaintiff on

---

[1]Sales, 35 Cyc. p. 574; [2]Id., 35 Cyc. p. 243 (1916 Anno).

a directed verdict.    Defendant brings error.    Reversed.

*Monaghan, Crowley, Reilley & Kellogg,* for appellant.

*Butzel & Butzel* (*Butzel, Levin & Winston* and *A. J. Levin,* of counsel), for appellee.

MOORE, J.    Plaintiff brought this suit to recover a balance claimed to be due from the defendant in the amount of $1,095.10.    The plaintiff is the maker of various electric appliances.    The defendant is an electrical contractor.    It bought from the plaintiff a switchboard which was to be installed in the plant of Ireland & Matthews.    The parties to this litigation had considerable dealings with each other.    It was the claim of Ireland & Matthews that the switchboard which was installed was defective and that company withheld payment therefor from the Turner Engineering Company until the defects were remedied.    The defendant company in turn withheld payment from the plaintiff company and this suit resulted.    It was the claim of defendant that it was compelled to pay out in order to remedy defects in the switchboard $750.75, which it sought to recoup.    At the close of the testimony the plaintiff moved for a directed verdict in its favor.

The trial judge expressed himself in part as follows:

"It is the duty of the defendant, before he can recover the amount of his set-off or recoupment, to show that the plaintiff did not manufacture and deliver the article which was contracted for.    There is certain testimony of certain defects in the board which has been produced by some of the witnesses for the defendant.    For instance, Mr. Nelson whose testimony was given to the effect that he found certain defects, but these defects which he found were discovered after this suit had been commenced, several years after the claim of the defendants.    These defects were all

visible defects and if an inspection of the board had been made at the time, or within a reasonable time after the board had been installed, these defects could have been discovered and a complaint made or notice given to the plaintiff of the defects. But there was no complaint made of this board or the defects until after this suit was commenced. Therefore, I charge you, gentlemen of the jury, that an unreasonable time had elapsed for the defendant to make that complaint, and furthermore on account of statements having been rendered to defendant each month, and that statements being paid, under our law it becomes an account stated. They have paid all previous accounts for several years upon statements rendered.

"I further charge you that the first notice given to plaintiff in this case of complaint, was made a year after the switchboard in this case was installed and there is an unreasonable time which has elapsed. I cannot see any question of fact that I can submit to you to pass upon, therefore, I will charge you to return a verdict for the plaintiff in the amount of the claim in this case, $1,095.10 including interest at 5 per cent., and to return a verdict of no cause of action as to the defendant's claim of set-off and recoupment.

"Interest was agreed upon in the amount of $146.80, making a total of $1,241.90."

A verdict and judgment was thereupon entered in favor of the plaintiff. The case is brought into this court by writ of error.

The attorneys for the plaintiff make the same claims in this court which they made in their motion for a directed verdict. It is their contention that as monthly invoices were sent and payments were made thereon that reduced the amount due to below $750 this resulted in an account stated, and that the defense sought to be made here is not available to the defendant, counsel citing *Rossman* v. *Bock,* 97 Mich. 430, and *Pabst Brewing Co.* v. *Lueders,* 107 Mich. 41.

We think it will appear, when a further statement of facts is made in the instant case, that the cases cited are distinguishable therefrom.

230—Mich.—5.

The contract was made in 1917.    The switchboard was in process of manufacture three or four months. It was first assembled in the plant of plaintiff.

In the contract was the following provision:

"We are to do all necessary busbar work on rear of board of rectangular copper of suitable capacity, furnished with a current density not exceeding 1,000 amps. per square inch, cross sectional area."

It is claimed by defendant that the busbar work was not properly done, and that this resulted in heating them and wasting electricity.

It is also claimed that the defect was not ascertainable by inspection, but required an actual test when it was installed.    We quote some of the testimony:

"Sections of the Ireland & Matthews plant were put into operation at different times, and as the sections were put into operation the current would be taken from the board.    As soon as any considerable current was put onto the board we were notified that it was heating excessively.    We thereupon went to the plant and tried to remedy it ourselves.    We notified the Mutual Electric & Machine Company.    They assured us that they would rectify the trouble.    We received this same assurance from them for a number of years.

"*Q.* The first time that they went up there did they go soon after you notified them that the board was not acting properly?

"*A.* Yes.    They acted promptly.    Very promptly. I don't remember the number of times they worked on the board.    They finally notified our company that they were unable to locate the trouble.    Several times they notified me and my superintendent verbally that they were unable to determine what the trouble was, and asked us to tell them what the trouble was.    *    *    *

"There were a great many conferences and negotiations back and forth between our company and the Mutual Electric & Machine Company with reference to the condition that existed and the fixing of it.    These conferences continued until the early part of 1922, during an interval of at least four years.    All during

this period there was no remedy by the plaintiff of the condition existing with respect to the board. Ireland & Matthews complained that the board was heating excessively and that they were not getting proper power, that they were losing power through the board.   *   *   *

"Ireland & Matthews all this time were looking to us to perform our contract with them and put it in proper shape. They were losing proper service through the board. This continued for a period of at least four years. Finally to remedy this condition, we employed Mr. J. D. Nelson, a switchboard man.   *   *   *

"We employed Mr. Nelson to do this work early in 1922. He worked on the board. Since the completion of his work the defect has been corrected; that is, the board is now operating properly. We were compelled to pay Mr. Nelson approximately $750."

There was correspondence between the parties. May 23, 1918, the defendant wrote plaintiff:

"We find that the busbars on the switchboard at the Ireland & Matthews plant are heating excessively."

April 19, 1920, plaintiff wrote defendant:

"We are and have been very desirous to straighten this matter out to our customer's satisfaction in so far as our material is concerned and would appreciate your advising us just when would be most convenient to arrange a trip to this plant, as the writer intends to take some of our engineering department with him."

Other letters of like tenor were written.

Mr. Nelson was employed to remedy the defect in the fall of 1921. We quote some of his cross-examination:

"Q. Did I understand you to say just now that the defects which you remedied were defects of manufacture?

"A. Yes. I make a distinction between knowing and finding evidence of it. From appearance, they evidently were defects of manufacture. The bus-

bars had this appearance. They did not seem to have been dressed down absolutely parallel and smooth where the contact was made, and the clamps being presumably part of the board, did not seem substantial enough for that weight of construction. If the specifications specified a clamp which was not substantial it would not be sufficient. The clamps were weak. One place I found discolored conditions underneath the contact which could not have been if it had been tight."

We again quote from the brief of counsel:

"The defendant has waived the alleged breach of warranty by failure to make a timely counter-claim.

"Section 49 of the uniform sales act (3 Comp. Laws 1915, § 11880) provides:

"'Acceptance does not bar action for damages. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor.'"

We do not think it can be said as a matter of law, in view of the testimony we have quoted and the correspondence, that plaintiff did not have notice of the claimed defects within a reasonable time. Nor do we think that an account stated was shown that would preclude defendant from presenting its claim.

We have considered the other claims of the plaintiff, but do not think they call for discussion. We think defendant was entitled to have its claimed defense submitted to the jury under proper instructions. See *Gibbons* v. *Farwell*, 63 Mich. 344 (6 Am. St. Rep. 301) ; *Smalley* v. *McGraw*, 148 Mich. 384; *Barto* v. *Steel Co.*, 155 Mich. 94; *Sheffer* v. *Fleischer*, 158 Mich. 270; *Haynes* v. *Maybury*, 166 Mich. 498; *Minkstimas* v. *Pantlind*, 170 Mich. 468; *Whitcher* v. *Railway*, 174 Mich. 242; *Quigley* v. *Yellow Taxicab Co.*, 225 Mich.

275; *Poikanen* v. *Thomas Furnace Co.*, 226 Mich. 614; *Jordan* v. *Burghardt*, 227 Mich. 301.

The judgment is reversed and a new trial ordered, with costs to the appellant.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.