PEERLESS WOOLEN MILLS *v.* CHICAGO GARMENT COMPANY.

1. SALES—CANCELLATION OF CONTRACT—EXTENSION OF CREDIT.
   Finding of trial court that plaintiff seller was warranted in cancelling contract to furnish cloth to defendant for manufacture of garments to be sold others handling such articles *held,* justified under circumstances shown, including return of a defendant's check because of insufficient funds, ignoring requests for payment and fact that amount of indebtedness materially exceeded amount agreed to be permitted at time contract was executed.

2. SAME—EXTENSION OF CREDIT—WAIVER—PREJUDICE.
   A seller's failure to stop shipments of cloth pursuant to contract of sale when credit limitation was exceeded *held,* not to effect a waiver of seller's right under contract to insist upon payment in accordance with terms of the contract as the forbearance indulged did not operate to the prejudice of the buyer nor did it constitute a modification of the contract.

3. SAME—PAYMENT UNDER PREVIOUS CONTRACT—COUNTERCLAIM.
   Buyer of cloth, used by it in making garments for sale to others handling such articles, was not entitled to claim based on alleged shortage under previous contract, where buyer never furnished the seller a statement as to the amount thereof and buyer sent the seller a check which latter accepted as "clearing past due invoices," since it is a fair conclusion that such check was sent and accepted on the basis that settlement of the previous contract had been made in full.

4. SET-OFF AND RECOUPMENT—COUNTERCLAIM—UNLIQUIDATED CLAIM FOR DAMAGES.
   An unliquidated claim for damages alleged to have been sustained in a wholly independent transaction may not properly be made the basis of a counterclaim.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  46 Am Jur, Sales §§ 796, 797.
[4]  46 Am Jur, Sales § 598.

5. PAYMENT—CLAIM FOR SHORTAGE—FRAUD—MISTAKE.

  Payment in full, without reservation, of an account for goods
    purchased, precludes the buyer from subsequently asserting
    that he was entitled to a credit for a shortage, in the absence
    of proof or claim of fraud or mistake.

Appeal from Grand Traverse; Brown ˙(Charles
L.), J.  Submitted October 9, 1956.  (Docket No. 57,
Calendar No. 46,180.)  Decided December 6, 1956.

Assumpsit by Peerless Woolen Mills against Chi-
cago Garment Company for goods sold and delivered.
Defendant filed counterclaim, alleging breach of con-
tract and delivery shortages in prior year.  Judg-
ment for plaintiff.  Defendant appeals.  Affirmed.

*William E. Myers,* for plaintiff.

*Murchie, Calcutt & Brown,* for defendant.

CARR, J.  Plaintiff brought this action to recover
for goods sold and delivered to defendant under an
agreement made in May, 1950.  The merchandise in
question was purchased to be made into hunting
coats, trousers and caps, which were designed for
sale to others handling such articles.  It was agreed
between the parties that credit in the sum of $5,000
would be extended to defendant.  The proofs indi-
cate that plaintiff shipped goods to defendant on 6
occasions, and that prior to the termination of said
contract payment for 3 of said shipments was made,
but apparently not within the time limit fixed by
the contract.  However, the shipments thus paid for
are not in issue in the present case.

It is conceded that merchandise shipped on June
29th and 30th, and on August 15, 1950, was received
by defendant, which failed to make payment.  The
total selling price of the said goods was the sum of
$8,698.17.  It further appears that a check in the

sum of $1,679.65 sent by defendant to plaintiff on or about August 25, 1950, was returned by the bank on which it was drawn because of insufficient funds to honor it. Approximately a month later this check was redeposited. This incident and the failure of defendant to make remittances for the 3 shipments involved in the present case, together with its general lack of promptness, caused the plaintiff to insist that defendant take care of the invoices for goods shipped in accordance with the agreement. Defendant failed to do so, and on October 6, 1950, plaintiff notified it that the contract was terminated. The instant case was instituted on November 24, 1950.

In its answer to plaintiff's declaration defendant admitted the execution of the contract and the receipt of the goods for which plaintiff sought to recover. However, it claimed that plaintiff wrongfully terminated the contract without completing the shipments contemplated, that defendant was forced to purchase goods in the open market at an increased price, and that it was unable to carry out its agreements with its customers. Defendant further pleaded that during the year 1949 it had purchased merchandise from plaintiff for which it made payment, that there was a shortage in the quantity of cloth actually delivered, and that in the action based on the 1950 agreement it was entitled to recoup damages because of the claimed shortage. Defendant accordingly attached to its answer a counterclaim. The trial judge, hearing the case without a jury, rendered judgment for the plaintiff in the full amount claimed by it. Defendant has appealed, contending that there should have been deducted from the amount of plaintiff's claim the sum of $2,135 by way of damages sustained by defendant in being compelled to purchase materials for its use from other sources, and the further sum of $2,160 because of the alleged shortage under the 1949 contract.

The trial judge concluded from the proofs that under the circumstances the plaintiff was justified in cancelling the contract. The finding in this regard is fully supported by the record. Defendant claims that the agreement with reference to the credit terms granted to it was in effect waived because plaintiff allowed the amount of indebtedness to it to materially exceed the sum of $5,000. It may not be said, however, that, because of its failure to stop further shipments when the credit limitation was reached, plaintiff waived its rights under the contract. Obviously, such forbearance did not operate to the prejudice of defendant. The latter ignored requests for payment and, likewise, plaintiff's assertion that, unless remittance was made for the goods shipped and received, in accordance with the contract, steps would be taken to compel payment. It is a matter of inference also that plaintiff's action was prompted, in part, because of the check received by it, deposited in its account, and returned by the bank on which it was drawn because of insufficient funds.

A situation analogous to that in the case at bar was presented in *Lower v. Muskegon Heights Co-Operative Dairy*, 251 Mich 450. There the parties entered into a contract for delivery of defendant's dairy products by plaintiff to his customers. It was specifically provided that plaintiff should make payment, for the goods received by him and disposed of, on 4 specified dates each month. Defendant terminated the agreement because of the failure of plaintiff to comply with the requirement, and the latter brought an action to recover damages for breach of contract. Defendant submitted a counterclaim for the price of products received by plaintiff and sold to his customers but for which he had not made payment. On appeal a judgment in plaintiff's favor was reversed, this Court holding that under the circum-

stances defendant was justified in refusing to continue under the contract. In discussing the situation it was said, in part (pp 454, 455):

"This contract by its clear and unequivocal terms required plaintiff to make payment in full 4 times each month, 'for all goods sold' by plaintiff. The fact that there was some laxity on defendant's part in requiring payments strictly in accordance with the contractual provision did not render such provision nugatory. Upon notice to plaintiff, defendant had the right at any time to demand payment in conformity with the terms of the contract. Defendant's repeated demands constituted notice to plaintiff that it was insisting upon its contractual rights. Defendant not only demanded payment of plaintiff but requested him to meet with defendant's manager relative to the arrearages, and asked him to turn over his route books for inspection as provided in his contract, all of which plaintiff refused to do. Plaintiff having thus violated the contract, the defendant was justified in declining to be bound thereby; and plaintiff has no right of action for damages because defendant elected so to do. This result follows regardless of whether the contract be construed to be primarily one of sale or one of agency. In either case the times when payments should be made were definitely fixed by its terms. Appellant's assignment of error asserting that it should have had a directed verdict as to plaintiff's alleged cause of action is well taken."

Like considerations are applicable in the case at bar. The fact that plaintiff was lenient in its dealings with defendant did not operate as a modification of the contract, or an absolute waiver as to future operations thereunder. It was entitled to insist on defendant's compliance in making the payments that admittedly were past due. It will be noted that plaintiff's action in terminating the contract was not predicated on the delay in paying for

other shipments but on failure to meet the obligations resulting from the shipment and sale of the merchandise involved in this case.

The facts involved in *Gates* v. *Detroit & Mackinac R. Co.*, 147 Mich 523, cited by counsel for appellant in their brief, are not analogous to those in the case at bar. There plaintiff sued for damages for breach of a contract for the transportation of forest products. Defendant pleaded that plaintiff had not, during prior years in which the contract had been in force, complied with its terms as to the aggregate amount of such products that would be furnished for shipment each year. However, the proofs indicated that defendant had treated the contract as severable, that it had failed to provide adequate facilities for shipping, and had by its conduct waived strict performance of plaintiff's undertaking. It was held accordingly that under the facts of the case defendant was not entitled to rely on past acts in support of its claim that plaintiff had breached the contract. Such is not the situation presented in the instant case. The decision last cited and others of similar nature are not in point.

This brings us to a consideration of defendant's counterclaim based on the alleged shortage of shipments under the 1949 contract. It is claimed that the merchandise was received in rolls, and that an employee in the ordinary course of the business marked the cloth for the garments to be made therefrom. The cloth was then cut. Defendant's president testified that a shortage in a particular roll could not be found until the cutting took place. Defendant's claim was based on such method of determination.

Under date of July 30, 1949, the plant superintendent of defendant's factory wrote to plaintiff asserting an alleged shortage in approximately 75% of the rolls shipped, such shortage varying from 1/2

yard to 1 yard. In referring to the matter it was stated in this communication:

"Since we had never questioned the indicated yardage, the shortage was brought to our attention only by the fact that we segregate these rolls by length to match the length of our stencils and we found that where we were supposed to have 3, 4 or 5 ply in the stated yardage, we ended up 1/2 to 1 yard and more short on the last ply.

"You will appreciate that not only the direct monetary loss is considerable but also we had to pick up the last ply and re-lay it. We would appreciate your comment in this regard."

To this letter plaintiff, through its secretary, replied on August 2, 1949, as follows:

"We regret very much the trouble complained of of in your letter of July 30th, but it is very difficult to definitely say what shortages, if any, existed on the basis indicated.

"Our measuring machines are carefully checked, and I can say without qualification that complaints of shortages on our outerwear are practically nil.

"Please understand it is never our intention to dodge our responsibilities, and any time an actual remeasure of our pieces discloses a shortage, we will be very glad to make proper adjustment."

It appears from the testimony of defendant's plant superintendent, who was a witness on the trial, that no further claim was made on account of the alleged shortages. The record does not indicate that defendant ever furnished to plaintiff a statement as to the amount thereof, or that further correspondence was had between representatives of the parties. The 1949 contract was, so far as this record discloses, completed, and in March, 1950, defendant sent to plaintiff a check in the sum of $7,986.78, which plaintiff accepted as "clearing past due invoices." It is a fair conclusion that such check was

sent and was accepted on the basis that settlement of the contract of 1949 had been made in full.

Defendant is now seeking to make a claim based on the alleged shortage, under the previous contract, in plaintiff's action to recover for goods shipped pursuant to the agreement executed in May, 1950. The trial court concluded that all matters involved in the 1949 contract were disposed of by the final settlement. In any event, the claim now presented does not arise out of the subject matter of plaintiff's action, and may not properly be made the basis of a counterclaim. It amounts merely to an unliquidated claim for damages alleged to have been sustained in a wholly independent transaction. Had defendant sought to maintain an action for damages, after the making of the final settlement in March, 1950, based on alleged failure on plaintiff's part to fully perform the 1949 agreement, it could not have prevailed under the generally accepted rule, there being no proof or claim of fraud or mistake.

In *Pabst Brewing Co.* v. *Lueders,* 107 Mich 41, it was held that:

"Payment in full, without reservation, of an account for goods purchased, precludes the buyer from subsequently asserting that the goods were not merchantable, or that he was entitled to a credit for a shortage in packages or for expense of cartage." (Syllabus 1.)

*Mutual Electric & Machine Co.* v. *Turner Engineering Co.,* 230 Mich 63, may be differentiated on the basis of the facts involved. There, in an action to recover the balance due on the sale of a switchboard, defendant sought to recoup damages for the breach of the contract which was the basis of plaintiff's action. It appears that complaint had been made that the switchboard was not operating properly, and that the plaintiff attempted to correct per-

formance. Defendant had installed the switchboard for a company which declined to pay for it until the defects were remedied. It was held that defendant was entitled to seek damages under its claim of recoupment.

In *Leonard Refineries, Inc.,* v. *Gregory,* 295 Mich 432, it was held, in a suit on an account stated, that defendant was entitled to introduce testimony to show fraud or mistake with reference to the quantities of oil and gasoline delivered under the contract on which plaintiff's case was based. It does not appear that in any of the cases cited and relied on by counsel for appellant a counterclaim was interposed on the theory that a prior contract between the parties under which their mutual rights and obligations had been disposed of by settlement had not been fully performed by the plaintiff. Under the facts in the case at bar defendant's counterclaim was properly rejected.

The judgment of the trial court is affirmed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.