WILMARTH *v.* HARTMAN.

1. GUARANTY—COMMON LIABILITY UPON GUARANTORS.

   An instrument guaranteeing the payment of a corporation's indebtedness to a bank, signed by the stockholders, put a common burden equally upon all of the guarantors.

2. SAME — AGREEMENT AMONG GUARANTORS APPORTIONING THEIR LIABILITY.

   An agreement by the guarantors to apportion among themselves their common liability to the bank, while valid as among themselves, would in no way affect their common liability to the bank.

3. SAME—CONTRACT APPORTIONING LIABILITY AMONG GUARANTORS CONSTRUED.

   An agreement in writing among the stockholders of a corporation who had guaranteed the payment of the corporation's indebtedness to a bank, that the proportionate liability of each respective signer should be absolutely limited to their shares in the capital stock, is construed to mean that the liability of each is proportionate to the amount of stock held by him, rather than that each has the same liability up to the liability of the smallest stock-

¹Guaranty, 28 C. J. § 84 (Anno); ²Id., 28 C. J. § 94 (Anno); ³Id., 28 C. J. § 219; 12 R. C. L. 1099; 5 R. C. L. Supp. 675.

holder, who then drops out, and so on until the largest stockholder would be left to pay the balance.

4. CONTRACTS—CONSTRUCTION—PRACTICAL CONSTRUCTION.
   In the construction of a contract by the courts, if its terms are uncertain, the practical construction given it by the parties becomes important.

Error to Kent; Brown (William B.), J. Submitted January 27, 1927. (Docket No. 114.) Decided April 1, 1927.

Assumpsit in justice's court by O. B. Wilmarth against Henry Hartman for contribution on a contract apportioning liability on a contract of guaranty. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Wykes & Sherk,* for appellant.

*Elvin Swarthout,* for appellee.

SNOW, J. In January, 1917, the American Stock Food Company was organized as a Michigan corporation for the purpose of conducting a hog ranch near Grand Rapids on which the garbage of the city was consumed, taking over the business of defendant Hartman and one Alvah Brown who had previously been conducting it. By May of the following year the corporation had become indebted to the Grand Rapids National City Bank in the sum of $26,500. Defendant reorganized it, interesting new capital, among which was plaintiff's, and some of the old stockholders retired. The sum owed the bank was then guaranteed by the following instrument, signed by both plaintiff and defendant, and six other stockholders.

"The Grand Rapids National City Bank of Grand Rapids, Michigan, is hereby requested to give and con-

---

⁴Contracts, 13 C. J. § 517.

tinue to American Stock Food Company credit as it may desire from time to time, and in consideration of any and all such credit the undersigned jointly and severally guarantee the payment of any indebtedness now or hereafter owing to said bank by said American Stock Food Company, and agree to indemnify said bank against any loss thereon, but said bank shall in no event collect from the undersigned a greater sum than $26,500; and do hereby waive a notice of the acceptance of this guaranty and of any and all indebtedness at any time covered by the same. This guaranty shall continue as to each of the undersigned until the bank shall receive written notice from him of the discontinuance thereof as to him, and the death of one or more of the signers, or notice of discontinuance thereof from one or more shall not operate as a discontinuance as to the others.

"Dated May 20, 1918.

(Signed)  "ALVAH BROWN,
          "HENRY HARTMAN,
          "O. B. WILMARTH,
          "GEORGE LIVERTON,
          "JOHN P. FREEMAN,
          "D. G. MANGE,
          "F. S. FREEMAN,
          "P. C. FREEMAN."

At the same time, guaranties of indebtedness were also signed covering obligations of the company to Lowell State Bank, not exceeding $5,000, Saranac State Bank, not exceeding $5,000, and a loan was made at Lake Odessa State Bank indorsed by four of the directors.

Also on the same day, and as a part of the same transaction, the guarantors signed the following agreement among themselves:

"May 20, 1918. The undersigned having each signed a guaranty of indebtedness to the Grand Rapids National City Bank from the American Stock Food Company, not exceeding $26,500, it is hereby agreed that the proportionate liability of each respective signer shall be absolutely limited to their shares in the capital stock of the company, upon the basis of the present

stock holdings of the undersigned, as set opposite our names:

ALVAH BROWN .....................$13,000
HENRY HARTMAN ................... 13,000
O. B. WILMARTH................... 5,000
GEO. LIVERTON ................... 2,000
JOHN P. FREEMAN ................. 2,000
D. G. MANGE ..................... 1,100
F. S. FREEMAN ................... 1,000
P. C. FREEMAN ................... 1,000."

In December, 1920, the corporation was reorganized into the Municipal Pig Farms Corporation, which took over all its assets and assumed all its liabilities. This corporation failed and a receiver was appointed for it in the Federal court in October, 1921. It paid less than 20 cents on the dollar, reducing the Grand Rapids Bank claim to about $16,000. During the years 1922 to 1925 the plaintiff was compelled by the bank to pay interest on the indebtedness which he and the others had guaranteed. He sued defendant in justice's court to recover the share of such interest for which defendant was liable. What that share amounts to, by giving construction to the agreement between the guarantors, is the only question before us.

Plaintiff claims the liability of the guarantors is to be proportioned among them upon the amounts of stock held by each as set opposite his name, while the defendant claims, quoting brief,

"each guarantor is subject to equal proportionate liability based upon the number of guarantors, with the limitation that the proportionate liabilty of each signer is absolutely limited to the amounts of their shares in the capital stock of the company as set opposite their names."

Plaintiff recovered according to his theory in the court below, and defendant brings error.

Until this action was commenced, the defendant had never denied his liability as being in the sum figured

by the plaintiff according to his interpretation of the contract.   In August, 1922, replying to a written request for payment made upon him by plaintiff in which the several liabilities of the guarantors were figured according to the percentage of stock each held, Mr. Hartman, apologizing for his delay, sent his check for the amount asked.   Therefore, the original interpretation put upon the contract by the parties and upon which payment was made was as is contended for by plaintiff.

The guaranty of indebtedness to the bank put a common burden equally upon all the guarantors.   The agreement between them, while in no way affecting such common liability to the bank, attempted to proportion it among themselves.   Their right to do this is clear and we deem it unnecessary to cite authorities on the proposition.   But, as we understand, defendant contends that the effect of the agreement was to limit the total liability of each of the signers to the amount of his stock without otherwise in any way changing their general proportionate liability.   If defendant's interpretation of the contract should obtain, all would pay equal amounts until the smallest stockholder had paid up to the amount of his stock; he would then drop out and the remaining stockholders would pay equal amounts until the next smallest stockholder had paid to the amount of his stock; and so on until the largest stockholder would be left to pay the balance.   We find it impossible to give this agreement such construction.   It clearly provides for a "proportionate liability" upon "the basis of the present stock holdings."   This does not mean *the same liability* up to a certain amount, and after that amount is reached *no liability at all.*   Neither did the parties ever adopt such construction, nor do the facts and circumstances attending the making of the contract impress us that such was their intention.   Then, too, the contract was

given a practical construction by the defendant when he accepted and paid according to the theory of plaintiff. If the terms of the contract are uncertain, the manner the parties treated it becomes important. *Switzer* v. *Pinconning Manfg. Co.,* 59 Mich. 488; *Moore* v. *Andrews,* 203 Mich. 219; *Axe* v. *Tolbert,* 179 Mich. 556; *Ardis* v. *Railway Co.,* 200 Mich. 400; 13 C. J. p. 546.

Defendant's liability must be determined upon the basis of a construction of the contract as contended for by plaintiff. We understand the amount of the judgment was thus arrived at.

It is therefore affirmed, with costs to plaintiff.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.