LOWER *v.* MUSKEGON HEIGHTS CO-OPERATIVE DAIRY.

1. CONTRACTS—WAIVER—FAILURE TO REQUIRE STRICT COMPLIANCE DOES NOT RENDER PROVISION NUGATORY—NOTICE—REPEATED DEMANDS CONSTITUTE NOTICE.

   Laxity by dairy company in requiring payment in full four times a month for dairy products furnished by it, in accordance with its contract, would not render such provision nugatory, but upon notice it would have right at any time to demand payment in conformance therewith, and repeated demands for compliance therewith would constitute such notice.

2. SAME—BREACH OF CONTRACT—RESCISSION—SALES—PRINCIPAL AND AGENT.

> One selling dairy products furnished him by dairy company under contract, who failed to make payments in accordance with contract and refused to turn over his route book to manager of dairy company for inspection, as provided in contract, thereby violated the contract, justifying dairy company in declining to be further bound thereby, and it is immaterial whether contract be construed as one of sale or one of agency.

3. SAME—DIRECTED VERDICT.

> Where, in action for damages for breach of contract, it appeared that plaintiff first breached it, defendant was entitled to directed verdict of no cause of action.

4. PRINCIPAL AND AGENT—AGENT LIABLE ONLY FOR SUMS COLLECTED.

> If one selling dairy products furnished him by dairy company under contract was acting as its agent, he would be liable for purchase price of products sold only to extent that he had collected from customers.

5. CONTRACTS—CONSTRUED MOST RIGIDLY AGAINST PARTY PREPARING.

> Contract should be construed most rigidly against party preparing it, in determining its legal effect.

6. SAME—INTERPRETATION BY PARTIES SHOULD BE CONSIDERED.

> Interpretation or construction placed upon contract by parties by their conduct should be considered by court in construing it.

7. PRINCIPAL AND AGENT—CONTRACT CONSTRUED TO BE ONE OF AGENCY.

> Contract between dairy company and one selling its products, in which latter is referred to as "selling agent," company dictated price at which products should be sold, had control of matters of sanitation, caused the business to be publicly conducted in its name, expressly retained ownership of routes over which products were delivered, and also required bond securing it against embezzlement, is construed to be one of agency.

Error to Muskegon; Vanderwerp (John), J. Submitted June 17, 1930. (Docket No. 9, Calendar No. 34,953.) Decided October 3, 1930.

Assumpsit by Roy C. Lower against Muskegon Heights Co-operative Dairy, a corporation, for breach of a contract of agency. Counterclaim by defendant for money due. From judgment for plaintiff, defendant brings error. Reversed and remanded for judgment on counterclaim.

*Balgooyen & Cook*, for plaintiff.

*Alexis J. Rogoski*, for defendant.

North, J. After having worked for the defendant by the month on a salary, plaintiff in August, 1926, entered into a written contract by which defendant agreed to furnish to plaintiff for delivery to his customers defendant's dairy products. The contract was for a period of one year with provision for extending the term. It was renewed for one year in August, 1927, and again for a like period in August, 1928. In addition to making deliveries on an already established route, plaintiff developed a second route. At first he did the work on both, but later entered into a partnership arrangement with one Archer Morden who thereafter attended to the business of the second route. Defendant charged to plaintiff under their contract all of its dairy products used in covering both routes. Evidently credit was too liberally extended by plaintiff and his associate to their customers, and plaintiff became in arrears in payments due defendant in excess of $1,300. He insisted he could not comply with defendant's demands for payment until he collected from the customers. He refused to meet with defendant's manager or submit his route books for inspection, as provided in his contract. It is a fair inference from the record that defendant's manager

thought plaintiff was collecting more money than he was accounting for. The former testified: "I thought that he was holding back on the Fruitport route." In November, 1928, defendant discontinued furnishing its products to plaintiff. Thereafter plaintiff brought this suit for breach of the contract. On trial before the court without a jury, the circuit judge found damages for plaintiff in the amount of $681.42, from which was deducted $289, which the court found plaintiff had collected from customers and retained, thus leaving the amount of plaintiff's judgment $392.42. The items of damages found by the circuit court were $307.42 for loss of time, $360 for loss of the route developed by plaintiff, and $14 for repainting plaintiff's truck in order to remove therefrom defendant's name. Defendant reviews by writ of error.

The defendant urges as a complete defense to plaintiff's alleged cause of action that plaintiff first breached the contract. The breach primarily relied upon by defendant was plaintiff's failure to make weekly settlements in full for products furnished by defendant. Plaintiff claims this provision of the contract was waived by common consent of the parties. The pertinent portions of the contract are quoted:

"The party of the first part (defendant), will furnish party of the second part (plaintiff), milk, cream and other dairy products that the party of the first part, can supply and that the party of the second part, shall desire on the following terms and conditions:

"Prices—The price of milk shall be  *  *  *, butter, if any, shall be at the current wholesale price from other wholesalers, this being the net cost to the party of the second part, who are to act as selling

agents for the party of the first part, and dispose of their products at an increased price or commission, under the terms of this contract.   *   *   *

"Payments—Payments shall be made to the party of the first part, at its dairy on the 6th, 13th, 20th, and 27th days of each month for all goods sold during the seven days prior thereto. If such days come on Sunday payments shall be made the following day.

"Amounts—The party of the second part shall be required to take his entire supply of dairy products to satisfy all of his customers from the party of the first part, each day.   *   *   *

"Sale Price—The party of the second part, shall furnish his customers at the same price charged by the party of the first part, to similar customers or such other prices as shall be agreed upon between the manager of the party of the first part, and the party of the second part.   *   *   *

"Route—Each agent shall have the same wholesale and retail trade as he now has.   *   *   *

"The route shall remain the property of the Muskegon Heights Co-Operative Dairy and   *   *   *, the party of the second part, must also leave their route books once each week at the dairy for the manager's inspection furnishing the manager with the name and address of each customer they hold."

This contract by its clear and unequivocal terms required plaintiff to make payment in full four times each month, "for all goods sold" by plaintiff. The fact that there was some laxity on defendant's part in requiring payments strictly in accordance with the contractual provision did not render such provision nugatory. Upon notice to plaintiff, defendant had the right at any time to demand payment in conformity with the terms of the contract.

Defendant's repeated demands constituted notice to plaintiff that it was insisting upon its contractual rights. Defendant not only demanded payment of plaintiff but requested him to meet with defendant's manager relative to the arrearages, and asked him to turn over his route books for inspection as provided in his contract, all of which plaintiff refused to do. Plaintiff having thus violated the contract, the defendant was justified in declining to be bound thereby; and plaintiff has no right of action for damages because defendant elected so to do. This result follows regardless of whether the contract be construed to be primarily one of sale or one of agency. In either case the times when payments should be made were definitely fixed by its terms. Appellant's assignment of error asserting that it should have had a directed verdict as to plaintiff's alleged cause of action is well taken.

Under its plea defendant gave notice of recoupment or counterclaim. It seeks judgment against plaintiff for $994.04 as the unpaid purchase price of its products sold to customers on plaintiff's routes. If these products were sold to plaintiff by defendant clearly he is liable therefor; but if, as plaintiff claims, the contract makes him an agent only for the distribution and sale of defendant's products, then it is equally clear that plaintiff should not be found liable for the purchase price except to the extent that as such agent plaintiff collected from the customers. Plaintiff admits that he collected $283.79 for which he has not accounted.

The contract in issue was evidently prepared by defendant, and is in the form used by it with the other men who deliver its products. Therefore in determining its legal effect, it should be construed most rigidly against the defendant. *Patterson* v.

*Miller,* 249 Mich. 89. In so far as the parties by their conduct have placed an interpretation upon the contract, such interpretation or construction should be given consideration in arriving at a conclusion. *McIntosh* v. *Groomes,* 227 Mich. 215; *Jefferson Park Land Co., Ltd.,* v. *Pascoe,* 246 Mich. 96. We think that, fairly construed, this contract must be held to be primarily one of agency. It refers to second parties as ''selling agents for the party of the first part.'' In the ''route'' paragraph it again denominates each second party as defendant's ''agent.'' Defendant seems to have so treated others with whom it had similar contracts. It dictated the price at which its products should be sold, had control of matters of sanitation, caused the business to be publicly conducted in its name, and expressly retained ownership of the routes over which its products were delivered. Defendant also required of each of its deliverymen a bond securing it against embezzlement. If defendant's products were sold to plaintiff rather than delivered to him as an agent, it is difficult to understand the occasion for taking an embezzlement bond. We think plaintiff was defendant's agent, and as such was legally obligated to pay defendant only to the extent he collected on sales to customers. Under the contract defendant had the right to insist upon settlements with its agent at the times fixed. Failure of an agent to pay in full at the times specified in his contract is such a breach as justifies rescission of the agency contract by the principal; but it does not necessarily follow that the agent is legally obligated to pay his principal the uncollected sums due for sales made. The instant contract does not so provide. However, plaintiff admits collections to the amount of $283.79 for which he has not accounted, and for that amount

defendant should have had judgment against the plaintiff.

The case is remanded to the circuit court with directions to set aside the judgment entered for plaintiff and in lieu thereof to enter judgment in favor of the defendant and against the plaintiff for damages in the sum of $283.79. Defendant will have costs of both courts.

Wiest, C. J., and Butzel, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.