## CITY OF BIG RAPIDS v. MICHIGAN CONSOLIDATED GAS COMPANY.

1. GAS—RATES—PUBLIC SERVICE COMMISSION—MUNICIPAL CORPORATIONS.

   Portion of decree holding that the public service commission has power to fix rates for gas, either natural or artificial, to be furnished by gas company to city is affirmed (Act No. 3, § 6, Pub. Acts 1939).

2. COSTS—PUBLIC QUESTION—GAS RATES.

   No costs are awarded in suit to determine whether gas rates for city were to be fixed by the public service commission or city, a public question being involved (Act No. 3, § 6, Pub. Acts 1939).

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am. Jur., Public Utilities and Services, § 202.
[2] 14 Am. Jur., Costs, §§ 23, 91.

Appeal from Mecosta; Pugsley (Earl C.), J. Submitted January 20, 1949. (Docket No. 46, Calendar No. 44,303.) Decided April 11, 1949.

Bill by City of Big Rapids against Michigan Consolidated Gas Company to restrain defendant from promulgating new rates for natural gas except under provisions of certain franchise ordinances. Decree recognized right of Michigan Public Service Commission to fix rates. Plaintiff appeals. Defendant cross-appeals. Modified and affirmed.

*John E. Dumon,* City Attorney, *Albin J. Schinderle,* Acting City Attorney (*D. H. Worcester,* of counsel), for plaintiff.

*Dyer, Angell, Meek & Batten* and *Clare J. Hall,* for defendant.

BOYLES, J. The question in this case is whether the Michigan public service commission has the right to fix rates for the sale of natural gas in the city of Big Rapids. The city claims the right by virtue of certain ordinances which the city claims constitute a franchise contract, giving the city the right to fix the rates. The defendant gas company claims that the city has no such vested right.

Plaintiff city of Big Rapids is a home-rule city and the defendant Michigan Consolidated Gas Company is a public utility distributing natural gas within the city of Big Rapids and elsewhere. March 5, 1948, the defendant utility filed a petition with the Michigan public service commission, seeking to establish a new and higher uniform rate in a so-called "Western district of Michigan," including the city of Big Rapids. Thereupon the city of Big Rapids instituted this suit in chancery, claiming that defendant was bound by the terms of one of two franchises,

ordinance No. 98, or ordinance No. 112, enacted by the city and adopted by the voters. The city sought to enjoin the prosecution of the defendant's petition before the Michigan public service commission insofar as it applied to natural gas rates in the city of Big Rapids. The court entered an order temporarily restraining the defendant from taking any further steps toward fixing or regulating any such rates other than as provided for in said ordinances.

Issue was joined and at the conclusion of the hearing the court filed an opinion which held, in effect, that under the circumstances of the case ordinance No. 98 covered the distribution of natural gas in the city but that the fixing of rates for natural gas in the city was under the jurisdiction of the Michigan public service commission. The court held that ordinance No. 98 was a valid and binding contract between the parties. The trial court held, however, that the city had not validly fixed rates in accordance with the franchise prior to the passage of Act No. 3, Pub. Acts 1939 * (Comp. Laws Supp. 1940, § 11017-1 et seq., Stat. Ann. 1946 Cum. Supp. § 22.13[1] et seq.), and further held that the provisions of the franchise that the city commission "shall, from time to time, by ordinance fix the maximum net rate," were superseded by said act of the legislature which the court held gave exclusive jurisdiction to the Michigan public service commission over the defendant public utility and its rates. The decree as entered provided that the temporary injunction be dismissed, and that:

"The matter of fixing rates for gas, either natural or artificial, to be furnished by the defendant to the plaintiff is hereby held to be within the jurisdiction of the Michigan public service commission in accordance with the provisions of section 6 of Act No.

---

* See 3 Comp. Laws 1948, § 460.1 et seq.—REPORTER.

3 of the Public Acts of 1939, subject to such limitations and provisions as may be included in ordinance No. 98 as more fully set forth in the opinion of this court made a part hereof."

The city appealed from the decree as a whole, claiming that under either franchise (ordinance No. 98 or ordinance No. 112) the rate-fixing power was reserved by contract to the city, that the rates to be thus fixed were regulated by the terms of each franchise, and that plaintiff was entitled to an injunction restraining the defendant from prosecuting the petition before the Michigan public service commission. The defendant cross-appealed challenging that part of the decree which held that ordinance No. 98 was in force and effect as to the distribution of natural gas in Big Rapids, and also attacking the conclusion in the decree that the jurisdiction of the Michigan public service commission was subject to ordinance No. 98 and the opinion of the court "made a part hereof."

Michigan Consolidated Gas Company is the successor of Big Rapids Gas Company, having acquired the properties and franchise of the latter company in December, 1943. Prior to February, 1934, Big Rapids Gas Company distributed manufactured gas in the city of Big Rapids. That company had been granted a franchise by the city in January, 1931, known as ordinance No. 98, to distribute "manufactured gas." Section 1 of said ordinance No. 98 provided:

"That the right and privilege of erecting and maintaining gas works within the city of Big Rapids and of laying, maintaining, operating and using gas pipes, mains, conductors and service pipes in the streets, alleys, highways and public places of the city of Big Rapids for the purpose of supplying and selling manufactured gas for lighting, fuel and all purposes to the said city of Big Rapids and the in-

habitants thereof, be and is hereby granted and secured to the Big Rapids Gas Company, its successors and assigns for a term of 30 years, hereinafter referred to as the company, subject to the terms, conditions and restrictions mentioned in this ordinance."

*Natural* gas was not yet available, and after the discovery of natural gas near Big Rapids in 1933, by James M. Taggart and William C. Taggart, as individuals, doing business as Taggart Brothers, they sought a purchaser for this gas. Taggart Brothers sought a franchise from the city of Big Rapids, and franchise ordinance No. 112 was formally adopted and approved by the electorate on October 2, 1933. This ordinance, accepted in writing by James M. Taggart and William C. Taggart, granted to them the right to distribute both manufactured and natural gas in Big Rapids for a term of 30 years. Subsequently Taggart Brothers, Inc., a Michigan corporation in which James M. and William C. Taggart held a half-interest in the stock, acquired a controlling interest in the capital stock of the Big Rapids Gas Company. Until about February, 1934, Big Rapids Gas Company continued to distribute manufactured gas in Big Rapids, when it began distributing natural gas and filed a schedule of rates for natural gas with the Michigan public utilities commission, and a like schedule with the city commission.

Big Rapids Gas Company continued to distribute natural gas in the city of Big Rapids until December 27, 1943, at which time it sold its properties, including franchises, to the defendant herein. James M. and William C. Taggart, as individuals, never conducted any operations in the city under ordinance No. 112, never engaged in the sale and distribution of gas in Big Rapids, nor did they assign their

rights under ordinance No. 112 to Big Rapids Gas Company.

Section 4 of ordinance No. 98, on which plaintiff relies in part for its right to fix natural gas rates, provides in part as follows:

"The commission of Big Rapids shall, from time to time, *by ordinance* fix the maximum net rate of charge for gas to be made by the company to the city of Big Rapids and the inhabitants thereof, pursuant to the terms of the charter of the city of Big Rapids, adopted on the 2d day of February, A.D. 1914."

On January 1, 1934, Big Rapids Gas Company filed with the Michigan public utilities commission a schedule of rates and rules and regulations governing the sale of natural gas in Big Rapids. On February 5, 1934, the city commission adopted a *resolution* fixing natural gas rates for Big Rapids. The rates thus adopted were identical with those filed by the Big Rapids Gas Company with the public utilities commission on January 1, 1934. On August 20, 1934, the city commission adopted a *resolution* that the present gas rates be continued until such time as the earnings warranted a lower rate. These were the only actions taken by the city concerning rates for natural gas to be charged in the city, until after the controversy arose which is the subject of this litigation.

Since August 20, 1934, no change in the rates has been made, and no change has been sought by either the city or the utility until March 5, 1948, when defendant filed its petition with the Michigan public service commission.

After receipt of notice of defendant's petition filed with the Michigan public service commission, the city commission of the city of Big Rapids held a meeting on March 20, 1948, and passed a resolution setting April 5, 1948, for a hearing on the mat-

ter of changing and fixing the gas rates in the city. Notice thereof was mailed to the defendant. On March 22, 1948, the instant suit was commenced, a temporary restraining order granted, and order to show cause issued.

From the foregoing it is obvious that if the defendant has any franchise to use the streets and public places of Big Rapids for the distribution of gas in said city and to its inhabitants, it is by virtue of ordinance No. 98, adopted in January, 1931, granting a franchise to defendant's predecessor and assignor, the Big Rapids Gas Company. It is true that the first paragraph of ordinance No. 98 refers to manufactured gas only. However, the other provisions refer generally to "gas," without the limitation. In 1932, an ineffective effort was made to adopt ordinance No. 107, to amend ordinance No. 98 by adding section 1–A, so as to include *natural* gas. However, ordinance No. 107 did not receive the three-fifths affirmative vote of the electors necessary for its adoption. Michigan Constitution (1908), art. 8, § 25. In 1933, ordinance No. 112 was passed and adopted by the requisite affirmative vote of the electors. It granted a franchise *to James M. and William C. Taggart* to distribute both manufactured and natural gas in Big Rapids, for 30 years. But this franchise (ordinance No. 112) was never assigned by James M. and William C. Taggart to the Big Rapids Gas Company. Although the Big Rapids Gas Company began to distribute *natural* gas in Big Rapids in 1934, and continued to do so until it sold out to the defendant in 1943, its use of the public streets in Big Rapids could not have been by virtue of ordinance No. 112, inasmuch as the franchise granted to the two Taggart brothers, as individuals, by ordinance No. 112, was never assigned by them to the Big Rapids Gas Company. During those years, if the Big Rapids Gas Company had any

franchise right to use the streets and public places
in Big Rapids for distributing gas, it was by virtue
of ordinance No. 98, legally adopted in 1931, giving
it that right.   In 1943, Big Rapids Gas Company
transferred that franchise to the defendant utility.
We need not be concerned with the question whether
the two individual Taggart brothers lost their rights
under ordinance No. 112 by abandonment or non-
user.   It is conceded here that the two Taggart
brothers never distributed gas in Big Rapids, or
owned and operated any gas distribution system, as
individuals.   James M. and William C. Taggart, as
individuals, are not parties in this case.   The fact
that they held half of the shares of stock in Taggart
Brothers, Inc., a corporation, or that they later ac-
quired a controlling interest in the stock of the Big
Rapids Gas Company, or that the latter corporation
sold *its* property and franchises to the defendant,
does not lead us to the conclusion that ordinance
No. 112 is a franchise held by the defendant Mich-
igan Consolidated Gas Company by reason of those
circumstances.   The record plainly shows that the
parties to this case, by their own acts, have not con-
sidered that the defendant was distributing gas in
Big Rapids under or by virtue of ordinance No. 112.
Certainly the Big Rapids Gas Company, never the
owner of the franchise granted by ordinance No.
112, could not rely upon it for any rights.   And its
successor, the defendant, makes no claim of any
right thereunder by virtue of a disputed assignment
purported to have been made to it by the two Tag-
garts, as individuals, or Taggart Brothers, Inc.   On
the contrary, the defendant argues that ordinance
No. 112 has no present validity.   We agree with the
trial court that:

"The status of the parties to this suit, however,
was in no way affected by the assignment of this

ordinance, which the proofs fail to show was ever utilized by either party."

*Does Ordinance No. 98 include the Distribution and Sale of Natural Gas?* The trial court held that ordinance No. 98 included the distribution and sale of both manufactured and natural gas. For obvious reasons the city (appellant) does not question the correctness of that conclusion—the defendant, by its cross appeal, makes an issue of that part of the decree which so holds. It argues that ordinance No. 98 refers only to manufactured gas. It is difficult for us to understand how the defendant can claim the right to use the city streets for its pipelines to distribute *natural* gas, which it (and its assignor utility) has been doing since 1934, and at the same time argue that it has had no right to do so, under ordinance No. 98. It now claims that the term "manufactured" gas is used in section 1 of ordinance No. 98 in a restricted sense, yet it has never acted on that assumption.

The title of ordinance No. 98 is an ordinance granting permission to the Big Rapids Gas Company, "to maintain a gas plant, lay, operate, and use gas pipes, mains, conductors, and service pipes in the streets, alleys, highways and public places, and to sell and supply gas in the city of Big Rapids."

Section 1 states that it is "for the purpose" of supplying and selling *manufactured* gas. There are 17 other sections in said ordinance, and every reference therein is merely to "gas." Section 2 requires that:

"All gas sold in the city of Big Rapids * * * shall have a monthly average of total heating value of not less than 550 British thermal units, or such higher heat value as may be fixed by the Michigan public utilities commission."

Natural gas complies with the above requirement, its heat value being approximately twice that of manufactured gas. We find nothing in the ordinance inconsistent with the conclusion that it may be considered to refer to natural as well as manufactured gas. The trial judge reached the right conclusion. It refers to both, and has been so considered by the parties hereto.

"The parties by their own conduct have placed a construction on this instrument and they are bound thereby." *Jefferson Park Land Co., Ltd.*, v. *Pascoe,* 246 Mich. 96, 107.

" 'If the terms of the contract are uncertain, the manner the parties treated it becomes important.' *Wilmarth* v. *Hartman,* 238 Mich. 20.

" 'Courts do not favor the destruction of contracts because of indefiniteness, and hold that uncertainty may be removed by subsequent acts, conduct, declarations, or agreements of the parties.' *Waites* v. *Miller,* 244 Mich. 267.

" 'In so far as the parties by their conduct have placed an interpretation upon the contract, such interpretation or construction should be given consideration in arriving at a conclusion.' *Lower* v. *Muskegon Heights Co-operative Dairy,* 251 Mich. 450.

"We, therefore, adopt the construction of the parties themselves." *Shelton* v. *Wilson,* 274 Mich. 433, 436.

*Were the Rates for Sale of Natural Gas fixed by the City under Ordinance No. 98?* In 1934, when the Big Rapids Gas Company began to distribute natural gas in the city of Big Rapids, it filed a schedule of natural gas rates with the Michigan public utilities commission, and a like schedule with the city commission of Big Rapids. The city commission passed a resolution on February 5, 1934, approving these rates for a period of "six months." On August 20, 1934, a committee appointed by the

city for the purpose of studying the gas rates made its report recommending the continuation of the rates "until such time as the earnings warrant a lower rate." The city commission by resolution adopted this recommendation.

Section 4 of ordinance No. 98 provides:

"The commission of Big Rapids shall, from time to time, *by ordinance* fix the maximum net rate of charge for gas to be made by the company to the city of Big Rapids and the inhabitants thereof."

The trial court concluded that the action taken by the city commission, attempting to fix natural gas rates by resolution rather than by ordinance, was ineffectual for that reason. The court said:

"In conclusion, it is the opinion of this court that the failure of the city of Big Rapids to legally adopt a rate by ordinance as required by section 4 of ordinance 98, and especially after the expiration of the six months' period fixed in the action of the city commission on February 5, 1934, left the door open at the time the legislature passed the 1939 law. * * *

"This conclusion does not overlook the meeting of the city commission held on August 20, 1934, which has been lately called to the attention of the court. These proceedings, however, did not meet the requirements of section 4 of ordinance 98 in fixing a legal rate as it was the duty of the plaintiff to do. The plaintiff's entire case is founded upon the rights preserved and established by this ordinance, and their failure to meet its requirements places them in a position now where they cannot do other than submit to the jurisdiction of the Michigan public service commission to establish future rates as is clearly provided by the 1939 law. No recommendation made by the council at any time which did not comply with the requirements of the ordinance can be considered such a fulfillment of the contract on the part of the city as will entitle it to prevail in this case. In other words, its failure to fix rates 'from

time to time by ordinance' deprives this court of any jurisdiction superseding that of the Michigan public service commission.''

If the court reached the right result, it matters not whether it was based on the right reason. The fact remains that the city did approve the rates for natural gas which the Big Rapids Gas Company filed with the Michigan public utilities commission. The crux of this case, in the final analysis, is whether the Michigan public service commission now has the right, to the exclusion of the city, to fix natural gas rates for the city of Big Rapids. Unless a contractual relationship exists between the city and the defendant utility by virtue of ordinance No. 98, and unless that ordinance, under the circumstances of this case, now gives the city the sole right to fix such rates, to the exclusion of the statutory powers vested in the Michigan public service commission, at least that part of the decree should be affirmed wherein it states:

"The matter of fixing rates for gas, either natural or artificial, to be furnished by the defendant to the plaintiff is hereby held to be within the jurisdiction of the Michigan public service commission in accordance with the provisions of section 6 of Act No. 3 of the Public Acts of 1939.''

The statute in question dates back to a time prior to 1934 when the Big Rapids Gas Company first filed with the Michigan public utilities commission certain natural gas rates for Big Rapids. Act No. 419, Pub. Acts 1919,[*] then in effect,[†] creating a public utilities commission, providing for the regulation and control of certain public utilities, and abolishing the Michigan railroad commission, provided:

---

[*] 2 Comp. Laws 1929, §§ 11006–11017, inclusive.

[†] Act No. 138, Pub. Acts 1931 (3 Comp. Laws 1948, § 460.54 [Stat. Ann. § 22.4]), merely added steam for heating or power.

"In addition to the rights, powers and duties vested in and imposed on said commission by the preceding section, its jurisdiction shall be deemed to extend to and include the control and regulation, including the fixing of rates and charges, of all public utilities within this State producing, transmitting, delivering or furnishing gas for heating or lighting purposes for the public use. * * * In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township." 2 Comp. Laws 1929, § 11009.

Act No. 3, Pub. Acts 1939,* creating the Michigan public service commission, in effect now and at the time this case arose, provides:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities." Comp. Laws Supp. 1940, § 11017-6, Stat. Ann. 1947 Cum. Supp. § 22.13(6).

We are not in accord with the claim advanced by the appellant, that ordinance No. 98, in itself, "regulates" the rates to be charged for natural gas in Big Rapids. Section 4 of the ordinance directs the city commission of Big Rapids to fix, from time to time, the maximum net rate of charge for gas. Assuming, but not deciding, that the city commission legally availed itself of such a right in 1934, there is no room for claiming that at any time since 1934, up until the time the present controversy arose in

---

* 3 Comp. Laws, 1948, § 460.1 *et seq.*—Reporter.

1948, the city has asserted any claim that ordinance No. 98 in itself "regulates" the rates to be charged in Big Rapids for natural gas. Appellant refers to provisions of the city charter which gives the city commission "the right by ordinance to fix a reasonable schedule or maximum rates, and to make reasonable changes therein from time to time, to be charged to the city and the inhabitants thereof for gas."

Conceding, but not deciding, that the city commission had the "right by ordinance to fix a reasonable schedule or maximum rates," the commission did not do so. Furthermore, while Big Rapids is a home-rule city, its charter powers must be exercised "subject to the Constitution and general laws of this State." Constitution (1908), art. 8, § 21; *Callahan* v. *City of Berkley,* 307 Mich. 701.

"The legislature may modify the charters of municipal corporations at will as the State retains authority to amend charters and enlarge and diminish the powers of such corporations.

"Every municipal charter is subject to the Constitution and general laws of this State (Const. 1908, art. 8, §§ 20, 21).    *    *    *

"Municipal corporations are State agencies, and, subject to constitutional restrictions, legislature may modify corporate charters of municipal corporations at will.

"Powers are granted to municipal corporations as State agencies to carry on local government, and State has authority to amend their charters and enlarge or diminish their powers.    *    *    *

"Where a city charter is silent upon a subject or different than pertinent statutory provision, the statute controls and must be read into the charter." *City of Hazel Park* v. *Municipal Finance Commission* (syllabi), 317 Mich. 582.

In *City of Jackson* v. *Consumers Power Co.,* 312 Mich. 437, a situation arose in the city of Jackson

quite similar to the one before us.  In both cases the claim was made by the city that franchise provisions gave the city the right to fix natural gas rates. In both cases, "the period during which these litigants had fixed the rate by agreement had expired." In the case at bar, even assuming that the action of the city commission in 1934 fixing rates by *resolution* was a sufficient compliance with the charter requirement that it be done by *ordinance,* still the city has taken no further action since 1934 up to the time this controversy arose in 1948.  There is nothing in the record to indicate that at any time since 1934 there has been any concerted action by both the parties hereto as to the fixing of rates.  In the *City of Jackson Case, supra,* the Court (syllabi) held:

"In 1887 franchise ordinance granting perpetual right to use city streets for gas mains, to furnish gas and operate in the city in a public service capacity, wherein maximum rate was fixed and reserved to the city council the 'right to alter or amend this ordinance and to make such further rules, orders, and regulations as may from time to time be deemed necessary to protect the interest, safety or welfare of the public, or the rights of property of' the city, the reservation did not vest the council with power to fix *ex parte* the rate at which gas should be furnished to consumers (Jackson ordinance No. 64, §§ 5, 6).

"The State public service commission is vested with complete power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, condition of service and all other matters pertaining to the formation, operation, or direction of all public utilities in the State except any municipally-owned utility and except as otherwise restricted by law (Act No. 3, Pub. Acts 1939).

"A company holding a franchise to use city streets for gas mains, to furnish gas and operate in the city in a public service capacity pursuant to an ordinance

after the last former rates agreed upon by the city council and the company had expired has the right to promulgate rates subject to the control of the State public service commission (Act No. 3, Pub. Acts 1939; Jackson ordinance No. 64, §§ 5, 6).

"The rate for gas as fixed in a franchise ordinance is not binding on the gas company after the rate as so agreed has expired and where the company continues the service thereafter it has a right to fix a reasonable charge therefor, which will not fail because not approved by the public service commission (Act No. 3, Pub. Acts 1939).

"The reserved constitutional power in a city to the control of its streets empowers it to contract, not to legislate, for public utility rates; the power to legislate with reference thereto having been lodged by the legislature in the public service commission (Const. 1908, art. 8, § 28; Act No. 3, Pub. Acts 1939).

"Promulgation of gas rate for city by gas company which had a perpetual franchise at same rate as that approved by the public service commission for other cities receiving the same gas service and constituting a part of the same distribution system after the expiration of the rates as hitherto agreed upon with city council was within the right of the company, the city's remedy being with the public service commission as a city does not have power to fix the rates *ex parte* (Const. 1908, art. 8, § 28; Act No. 3, Pub. Acts 1939; Jackson ordinance No. 64, §§ 5, 6, as amended by ordinance No. 189).   *   *   *

"A provision in the general laws of the State to which a home-rule charter is subject supplants any contravening charter provision.

"Rule that corporate charters in which no power of amendment or repeal is retained, when accepted, constitute contracts between State and corporation, applies to private corporations only.   *   *   *   .

"The power to regulate gas rates finally is vested in the public service commission notwithstanding provision of a home-rule city's charter lodging such

power in a city commission since such a charter is subject to the general laws of the State (Act No. 3, Pub. Acts 1939; Jackson charter 1914, § 5)."

In its brief, cross-appellant states:

"Consolidated took a cross appeal which in effect challenged the decision of the court that ordinance No. 98 was in force and effect as to the distribution of natural gas."

In addition to the above issue raised by cross-appellant (which we have already decided), the defendant cross-appellant also attacks that part of the decree which, after declaring that the fixing of rates for gas was within the jurisdiction of the Michigan public service commission, adds:

"Subject to such limitations and provisions as may be included in ordinance No. 98 as more fully set forth in the opinion of this court made a part hereof."

Evidently the purpose of the trial court was to make the court's lengthy opinion a part of the decree, in which the court added "as more fully set forth in the opinion of this court made a part hereof." Chancery courts speak through decrees. An appeal may be taken from decrees, but not merely from opinions of the trial court. That portion of the decree reading, "Subject to such limitations and provisions as may be included in ordinance No. 98 as more fully set forth in the opinion of this court made a part hereof in the foregoing paragraph 1," is not approved and must be deleted therefrom. We do not pass upon the accuracy or correctness of the many statements that may be found in the trial court's opinion. The decree is otherwise affirmed. A decree may be entered in this Court in accordance

herewith. No costs awarded, a public question being involved.

Sharpe, C. J., and Bushnell, and Reid, JJ., concurred with Boyles, J.

North, Dethmers, Butzel, and Carr, JJ., concurred in the result.