SUMMERS v. HARBOR HILLS ASSOCIATION.

1. EASEMENTS—CONSTRUCTION.
   An easement will never be presumed to be a personal right where it can be construed as appurtenant to some estate.

2. SAME—COMMUNITY AREA AROUND YACHT BASIN—EVIDENCE.
   Recorded restrictions on use of community 2-acre area around yacht basin in assessor's plat "for use of lot owners and plat proprietors only" did not restrict use to lot owners only, where evidence shows the homesite of the proprietors was upon the adjacent lake, hence, subsequent conveyance of proprietors' land outside of assessor's plat with right to use of community

REFERENCES FOR POINTS IN HEADNOTES
[1] 17A Am Jur, Easements §§ 9–12.
[2, 3] 17A Am Jur, Easements § 18 et seq.

area around yacht basin was valid, the reservation of an easement to the proprietors not being a personal one.

3. SAME—ASSESSOR'S PLAT—YACHT BASIN—RIGHTS OF GRANTEES OF LAND OUTSIDE OF PLAT.

A conveyance of land outside of an assessor's plat of part of tract theretofore owned by plaintiffs together with rights in community area around yacht basin within the plat is construed, under evidence presented, as having conveyed enforceable rights to grantees, since easement reserved was not personal to proprietor and recorded restrictions as to plaintiffs' entire tract clearly disclosed application to balance of plaintiffs' property outside of assessor's plat.

Appeal from Oakland; Holland (H. Russel), J. Submitted October 18, 1957. (Docket No. 83, Calendar No. 47,145.) Decided March 4, 1958.

Bill by Caleb E. Summers and Ruth M. Summers against Harbor Hills Association, as a voluntary association and as a Michigan corporation, Walter F. Fuller and Howard Van Deusen, individually and as representatives of a class of property owners, to cancel deeds and quiet title, and to enjoin interference with use of yacht basin as dedicated. Cross bill, joining Michael Kabcenell and Louise Kabcenell, to establish subdivision property owners entitled to exclusive use of such water and adjacent land. Decree for plaintiffs. Defendants appeal. Affirmed.

*Glenn C. Gillespie,* for plaintiffs.

*David E. Kull,* for defendants.

SMITH, J. The case before us involves the right to use a certain parcel of land for access to Cass lake in Oakland county. Those who own lots in what is known as the "assessor's plat" claim that their right to the use of this lot is exclusive. Others deny. They insist that they, also, are entitled to its use.

The facts pertinent to the issues on appeal cover a considerable range.  We will summarize them as briefly as possible, largely excluding those relating to issues tried below but not the subject of appeal to this Court.  Some 20 years ago, in 1936, the plaintiffs acquired approximately 180 acres of land on Orchard and Cass lakes in Oakland county.  Of this acreage we are particularly concerned with a parcel of approximately 140 acres bounded on the north by Cass lake, on the east by Orchard Lake avenue, on the south by Commerce road, and on the west by the section line.  In 1941 the plaintiffs made plans to sell substantially all of the property except their homesite.  To this end they entered into a written contract with a Mr. George Wellington Smith, a real-estate broker, for the platting and sale of the parcel.

In accordance with this agreement Smith prepared a proposed plat of the entire property.  It was divided into 83 lots.  On the plans of the proposed subdivision, between the then numbered lots 14 and 22 on Cass lake, was depicted a circular "boat basin" with a channel leading into the lake.  Around the basin, like a sort of collar, was a narrow "community area."  And leading from this collar to Erie drive was a large lot also labeled "community area." The purpose of these areas, testified both Mr. Smith and plaintiff Summers, was to provide access to the lake for the "back lot owners" who themselves had no lake frontage.  The name given to the proposed plat, comprising the entire 140 acres, was "Harbor Hills" and so it was advertised.

The platting contemplated by plaintiff Summers and Smith was never carried to completion for reasons immaterial hereto.  An assessor's plat of the north part of the 140-acre parcel fronting on Cass lake was, however, recorded, and thereafter plaintiff Summers sold and conveyed lots according to the Assessor's Plat of Harbor Hills.  Each purchaser

was furnished an abstract of title, included in which was a copy of the assessor's plat. All lots were sold, moreover, subject to the recorded restrictions. Thus the lot now owned by defendant Van Deusen is described in the warranty deed therefor as "Lot No Sixteen (16) Assessor's Plat of 'Harbor Hills' as recorded in liber 49, pages 48 and 48A, at Oakland county register of deeds office," and is stated to be "subject to the restrictions of record." We note that the assessor's plat incorporates the 2-acre community area before described. It is designated on the plat as "Part of outlot 'A' (Community lot for use of lot owners and plat proprietors only) Proposed Boat Basin," and (as to the rear parcel fronting on Erie drive), "Part of outlot 'A' (Community lot for use of lot owners of plat and proprietors only)."

Shortly after the recording of that plat, the plaintiffs, in accordance with their contract with Smith, executed and recorded a uniform plan of restrictions. This instrument was captioned:

"Restrictions

" 'Assessor's Plat of Harbor Hills' and also
. Parts of Sections 2 and 11, Village of
Orchard Lake, Michigan"

Contained in the restrictive instrument was a description of the entire 140-acre tract (excepting, among certain other areas, plaintiffs' homesite and a swampy tract of about 20 acres), together with what may fairly be interpreted as an agreement on the part of plaintiffs to insert the same covenants and conditions in all contracts and deeds to parcels of the acreage therein described. With reference to the community area, outlot A, we find the following:

"(d) Lots numbered outlot 'B' and 'C' may be used for business or kindred purposes such as stores with apartments above, offices, et cetera, and outlot 'A'

may be used as boat basin and approach to the lake exclusively by property owners in this subdivision."

So much for the background. Now to the particular deed giving rise to the controversy before us. On January 28, 1954, plaintiffs sold a parcel of land south of the assessor's plat to Michael and Louise Kabcenell and in the deed gave the grantees "to use of the boat basin and land surrounding the same, including outlot A, as shown on the recorded plat of Harbor Hills subdivision, for ingress and egress to Cass lake and for the purpose of boating, storage of boats, bathing and other lake and navigational privileges."

Matters soon thereafter came to a head. Defendants Fuller and Van Deusen (who lived on lots fronting on the boat basin), together with others, organized a Michigan corporation known as Harbor Hills Association. This corporation or its agents erected a sign on the outlot (their claimed authority so to do is not here in point) reading as follows:

"Private
Positively
No TRESPASSING
Violators
Will be Prosecuted
Harbor Hills Association"

Plaintiffs thereafter filed a bill of complaint praying cancellation of deeds to defendant Harbor Hills Association, for injunctive relief, and to quiet plaintiffs' title to the following lands (subject to certain rights and easements over parcel A):

"a. Outlot 'A' as shown on the Assessor's Plat of Harbor Hills, as recorded in liber 49 of deeds, pages 48 and 48A, Oakland county register of deeds office, and,

"b. That part of the SE–1/4 of the SW–1/4 lying under the waters of Cass lake, T2N, R9E, containing 19 acres."

Cross bill was thereafter filed against both plaintiffs and the Kabcenells, praying that the above-quoted provision of the Kabcenell deed be declared a breach of restrictions, for injunctive relief, and that the lot owners of the assessor's plat be decreed the exclusive right to use the boat basin and outlot A. The trial chancellor's decree upholding plaintiffs, the defendants come to us on a general appeal.

Both appellants and appellees agree that the questions before us are:

"1. Does the Assessor's Plat of Harbor Hills subdivision, as it was used by the plaintiffs, Caleb E. Summers and Ruth M. Summers, his wife, limit the use of outlot A and the boat basin to the lot owners in the assessor's plat?

"2. Does (sic) the recorded restrictions of Harbor Hills subdivision limit the use of outlot A and the boat basin to property owners in the assessor's plat?"

On the first question proposed, appellants urge that the language on the assessor's plat, referring to outlot A, "Community lot for the use of lot owners of plat and proprietors only," is "meaningless" and that "it is necessary to determine how the Summers used the assessor's plat and the language therein contained." They then go on with extensive testimony to establish that Mr. Summers intended by such language "to create an exclusive easement upon outlot A for the benefit of the lot owners of assessor's plat only." From this they conclude that since the "parties have, by their conduct and representations, placed a construction of the meaning of words upon the contract, that the Court will follow this construction," citing, among other cases, *Lower* v. *Muskegon Heights Co-Operative Dairy,* 251 Mich 450.

We cannot agree that the language restricting the use of the community parcel to lot owners of plat "and proprietors only" is meaningless. The reason for the employment of the language is made clear both by the testimony of Mr. Smith, and that of Mr. McAlpine, a surveyor and map maker, who was employed to make a study and layout for the platting of the property: The intention of the developers was to make available access to Cass lake for the owners of "back lots" who would otherwise have had no access to the lake. Thus the use of the outlot was reserved not only to the lot owners on the plat but to the "proprietors," as to whom, obviously, it was not a personal easement (their home was itself located on the lake) but appurtenant to their retained estate. (*cf., Akers* v. *Baril,* 300 Mich 619, 623, "An easement will never be presumed to be a personal right where it can be construed as appurtenant to some estate.") The word "proprietors," employed to accomplish this purpose, has, we are told, a definite meaning (this is Mr. McAlpine testifying):

"In my line of endeavor the owners of this particular property are called proprietors of the plat * * * I will say it was meant for the owners of that development, that is what it was meant for, that is what we have used it before."

Thus the clear inscription on the plat fails to limit the use of outlot A and the boat basin to the lot owners. Nor can we agree with defendants that the conversations of Mr. Summers tend to establish otherwise. There is testimony pro and con. On the one hand, Mr. Firth, one of the lot owners, testified that Mr. Summers had told him that "only those lots shown on the plat, yes, I believe there were 52" would be entitled to use outlot A and the yacht basin. Mr. Summers, on the other hand, testified that he had

never made such a statement. "I'm so sure of that," he testified, "because, to have said that would have been a lie, because I had already given lake privileges to a lot that was on Commerce road, far away from the Assessor's Plat of Harbor Hills." (This apparently refers to the Castleman property on Commerce road which contains the language:

"It being the intent hereof to grant to the parties of the second part the same rights and privileges in and to the waters of Cass lake, and said community lot, designated as outlot A, as are now, or hereafter may be enjoyed by other persons who now or may hereafter own lots in said subdivision.")

We agree with the trial chancellor that the conversations referred to are inconclusive, and, in addition, with his summation that:

"It seems obvious to the court that the conversations of the purchasers and Summers concerned themselves primarily with the *rights* and *privileges* of lot owners in said assessor's plat, the number of lots in said plat, the status of lots on Erie drive, the necessity of those in assessor's plat being given protection from outsiders—*rather than the status of other property owned by Summers.*" (Emphasis given is that of the trial chancellor.)

Appellants second question relates to the recorded restrictions, principal reliance being placed on section D, which, for convenience, will here be repeated in part:

"Lots numbered outlot 'B' and 'C' may be used for business or kindred purposes such as stores with apartments above, offices, et cetera, and outlot 'A' may be used as boat basin and approach to the lake exclusively by property owners in this subdivision."

. It is appellants' contention that the word "subdivision" as here employed refers only to the assess-

or's plat, and, if ambiguous, it must be construed most strongly against the plaintiffs.

It is only when the last quoted clause is read out of context that any problem arises with respect to its interpretation. The caption alone makes it clear that the restrictions have a dual application: "Restrictions," the caption says, as to Assessor's Plat of Harbor Hills "and also" parts of sections 2 and 11, village of Orchard Lake, Michigan. Continuing into the body of the instrument we find that the "parcels of land" described are the entire 140 acres, with unimportant exceptions (*e.g.*, homesite, swamp land). Going on specifically to the very clause in question, it speaks first of outlots B and C, which themselves form no part of the assessor's plat. Upon the record before us we cannot other than agree with the trial chancellor that:

"It cannot be said or held that the restrictions are limited alone to said assessor's plat. To say so would be to put a strained construction upon the quoted language. The restricted use of the word 'subdivision' contended for by the defendants is entirely negatived, not only by the instrument itself, but by the prior history of the 140-acre parcel and the intention of the parties. The court has heretofore observed that from the maps, contracts and restrictions made long prior to the inception of this suit that the word 'subdivision' referred to the entire 140-acre parcel and was not limited to the land included in the assessor's plat."

Purchasers, then, of lots in the assessor's plat were chargeable with knowledge not only of the inscription on the plat itself (which reserved an easement to plaintiffs' adjacent property) but of the recorded restrictions as well, a reference to which clearly discloses their application to the balance of

plaintiffs' property. Under these circumstances plaintiffs must prevail.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.